Lowell WOODS, Appellant,

v.

Michael L. KEMNA, Western Missouri Correctional Center, Appellee.

No. 92–3376.

United States Court of Appeals, Eighth Circuit.

Submitted June 16, 1993.

Decided Jan. 13, 1994.

John Austin Felton, Kansas City, MO, argued (Brian J. Madden, on the brief), for appellant.

John William Simon, Asst. Atty. Gen., Jefferson City, MO, argued, for appellee.

Before BOWMAN, Circuit Judge, HEANEY, Senior Circuit Judge, and BEAM, Circuit Judge.

BEAM, Circuit Judge.

Lowell Woods appeals the district court's denial of his *pro se* 28 U.S.C. § 2254 petition for a writ of habeas corpus. The district court denied Woods's petition, without an evidentiary hearing, because it found all of Woods's claims to be barred by the Missouri escape rule. We agree that the district court could not address Woods's claims, but for reasons of nonexhaustion rather than because of the escape rule or procedural bar. We therefore vacate the district court's order of denial and remand for entry of an order of dismissal without prejudice.

## I. BACKGROUND

In 1987, Woods was convicted in state court of possession of stolen property. Pending his January 19, 1988, sentencing date, Woods was released on a bond containing no travel restrictions. Before his scheduled sentencing, Woods traveled to Oklahoma and was arrested there on separate charges. Missouri law enforcement officers participated in Woods's Oklahoma arrest and immediately placed a hold on him. His Oklahoma bail was set at over $40,000. Woods contacted his Missouri bailbondsman on January 4, 1988, to arrange his Oklahoma bail, but was unable to make bail because of various Missouri holds. Although both the Oklahoma authorities and Woods's bondsman informed the Missouri authorities of Woods's situation and whereabouts, Missouri did not arrange for Woods to be transported to Missouri for sentencing. Woods, therefore, missed his Missouri sentencing hearing awaiting his Oklahoma trial. Woods's Missouri bond was not forfeited because "Woods was in custody at the time and was not able to appear" and the prosecuting attorney did not believe that Missouri law permitted forfeiture in those circumstances. Webster County Trial & Sentencing Transcript, p. 220.

After Woods was tried, convicted, and had served his time in Oklahoma, Missouri took custody of Woods and sentenced him for his

1987 stolen property conviction. Woods then filed a motion for post-conviction relief. The state moved for dismissal on the basis of the Missouri escape rule, by which courts may refuse to entertain defendants' complaints about their trials. The Missouri post-conviction motion court applied the rule and declined to consider Woods's motion. Woods's appeal from this ruling was consolidated with his direct appeal, and the Missouri Court of Appeals, also applying the escape rule, declined to consider either. Woods then filed a petition for a writ of state habeas corpus with the Missouri Court of Appeals, which was summarily denied. Finally, Woods filed a petition for federal habeas relief complaining of constitutional errors at his initial state trial. The federal district court applied the Missouri escape rule, and denied the petition without a hearing. Woods now appeals.

## II. DISCUSSION

Missouri argues that the district court correctly applied the escape rule to deny Woods's petition, and that even if the district court's independent application of the Missouri escape rule was in error, the Missouri courts' application of the escape rule operates as an independent and adequate state ground procedurally barring consideration of Woods's habeas claims. We have doubts that the Missouri escape rule suffices, *per se*, as an independent and adequate state ground to procedurally bar habeas review. The procedural bar question is complicated by the summary denial of Woods's state habeas petition, for we cannot be certain whether the denial was based on the merits of his claims or on the escape rule. Further, we find that, due to an erroneous factual assumption, the district court could not have adequately performed the analysis required by *Perko v. Bowers*, 945 F.2d 1038 (8th Cir.1991), cert.

*denied*, —— U.S. ——, 112 S.Ct. 1482, 117 L.Ed.2d 624 (1992).[1] However, we need not address these issues because we find, on the unique facts of this case, that Woods has not exhausted his state remedies.

Exhaustion of state remedies is a prerequisite for federal habeas review. 28 U.S.C. § 2254(b). Woods has exhausted his ordinary state remedies of direct appeal, post-conviction motions, and state habeas. However, he has yet available one extraordinary and unexhausted state remedy. That is a motion to the Supreme Court of Missouri to recall the mandate. *See Reimers v. Frank B. Connet Lumber Co.*, 273 S.W.2d 348 (Mo. 1954). While ordinarily we do not require federal habeas petitioners to attempt this last and rarely available remedy, we suspect that Woods has a real possibility of qualifying for such relief and prefer that the Supreme Court of Missouri definitively answer the question. *Compare Barks v. Armontrout*, 872 F.2d 237, 239 (8th Cir.1989) (exhaustion is satisfied where court convinced that petitioner's attempts to seek further state court relief would be futile) *with Feeney v. Auger*, 808 F.2d 1279, 1282–83 (8th Cir.1986) (remand for dismissal without prejudice appropriate where seemingly defaulted state court remedy may be open for peculiar question at hand).

In Missouri, a motion to recall the mandate may be granted in certain situations, such as when there has been a prejudicial mistake of fact, a deprivation of constitutional rights, or when there has been a recent United States Supreme Court decision contrary to the Missouri appellate decision in issue. *See State v. Thompson*, 659 S.W.2d 766, 768–69 (Mo.1983) (en banc); *Reimers*, 273 S.W.2d at 349. Woods may qualify on all of the above grounds for a motion to recall the mandate. There appears to have been a prejudicial

[1] Perhaps because there was no hearing, the district court mistakenly presumed that Woods's Oklahoma conviction, rather than his arrest and incarceration pending trial, prevented his presence at the Missouri sentencing. Thus the district court did not consider the effect of the presumption of innocence when analyzing whether Woods's failure to appear at his Missouri sentencing hearing was volitional. Regardless, the ultimate question for the escape rule is whether Woods intended to absent himself from his sentencing hearing by going to Oklahoma, and that question has never been the subject of any hearing. *See Stradford v. State*, 787 S.W.2d 832, 833 (Mo.Ct.App.1990) (rule applies to those who, following conviction, attempt to escape justice). We find it highly unlikely that the Missouri courts define escape to include *all* intervening arrests that prevent a defendant from presenting himself for sentencing without regard to the intent of the alleged escapee.

mistake of fact, perhaps because Woods has never been afforded a hearing on whether he indeed escaped. There has never been an inquiry into the ultimate question: his intent, vis-a-vis the pending sentencing hearing, when he went to Oklahoma. It is undisputed, however, that his Missouri bond had no travel restrictions, and that his travel to neighboring Oklahoma was permissible. It is also undisputed that he was merely in custody, awaiting trial, and thus presumably innocent of the pending charges when his sentencing date passed. It is also undisputed that the State of Missouri knew of his· location and predicament before he missed his sentencing hearing, having placed a hold on him with the State of Oklahoma. Also, Woods's Missouri bondsman had informed the Missouri officials of his whereabouts and predicament before the sentencing date, and Woods's bond was never forfeited for his failure to appear. We are hard pressed to believe that the Supreme Court of Missouri would define "escape" to include these factual circumstances.

Even if Missouri concludes that such circumstances qualify as an escape, Woods still has a substantial possibility for relief under a motion to recall the mandate based on the constitutional implications of his situation and based on an intervening United States Supreme Court decision, *Ortega–Rodriguez v. United States*, —— U.S. ——, 113 S.Ct. 1199, 122 L.Ed.2d 581 (1993). *See Thompson*, 659 S.W.2d at 768–69. In *Ortega–Rodriguez*, the United States Supreme Court examined the policy behind and the justification for the federal escape rule, which is the model for many state escape rules. Although that decision was an exercise of the Court's supervisory authority over the circuit courts and did not explicitly rely on the Constitution, it discusses both the federal and state escape rules, and their underlying justifications and rationales. The Court found that the escape rules protect the digni-

ty of the appellate process, and concluded that there is no rational justification for stripping a defendant of his appellate rights when the escape does not impinge on this procedure. *Ortega–Rodriguez*, —— U.S. at —— – ——, 113 S.Ct. at 1203–06. The *Ortega–Rodriguez* Court rejected an expansion of the federal escape rule that would permit appellate courts to dismiss an appeal where a defendant's defiance of the judiciary had no connection to the course of appellate proceedings, noting that trial courts are amply armed to protect their own dignity in the face of a defendant's disrespect for their proceedings. *Id.* at —— – ——, 113 S.Ct. at 1205–07. Since *Ortega–Rodriguez* questions the justification for an escape rule that applies when an act[2] does not impinge on the appellate process, we think Woods has a viable argument to present to the Supreme Court of Missouri under the last two grounds mentioned in *Thompson*. *See Thompson*, 659 S.W.2d at 768–69. He may argue that there has been an intervening United States Supreme Court decision that both calls into question Missouri's application of the escape rule to him and indicates that there may be an outer boundary within which any escape rule must function in order to be congruent with substantive due process.

## III. CONCLUSION

For the reasons stated above, we vacate the district court's order of dismissal and remand for entry of an order of dismissal without prejudice.

---

**2.** We note that the Supreme Court presupposes, throughout its discussion of the escape rule, that flight has occurred. The state argues that the escape rule should be applied to Woods, even if he did not flee, because Woods's intervening arrest was due to a volitional bad act, and his failure to appear was, thus, voluntary. That logic would permit appellate rights to be lost based on confinement for intervening jaywalking offenses, hospitalizations for suicide attempts, fault-based car accidents, or innumerable other intervening volitional and blameworthy acts that may prevent defendants from appearing before the court. We question whether the Missouri escape rule is devoid of a requirement of flight.