Lynda BRANCH, Appellant,

v.

William R. TURNER, Superintendent, Renz Correctional Center; William Webster, Attorney General of the State of Missouri, Appellees.

No. 92–3935.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 15, 1993.

Decided Sept. 21, 1994.

Cyril Hendricks, Jefferson City, MO, argued, for appellant.

John Simon, Asst. Atty. Gen., Jefferson City, MO, argued, for appellees.

## ORDER DENYING PETITION FOR REHEARING AND SUGGESTION FOR REHEARING EN BANC.

The suggestion for rehearing en banc is denied. Judge Bowman, Judge Beam, Judge Loken, and Judge Hansen would grant the suggestion for rehearing en banc.

The petition for rehearing by the panel is also denied.

On the panel's motion, the attached opinion and dissent containing expanded discussion on pages 374–75 and 376–77 are substituted for the opinion and dissent filed June 28, 1994.

Before FAGG, Circuit Judge, HEANEY, Senior Circuit Judge, and BOWMAN, Circuit Judge.

FAGG, Circuit Judge.

After the Missouri Court of Appeals dismissed Lynda Branch's consolidated direct and postconviction appeals under Missouri's fugitive dismissal rule, Branch brought this 28 U.S.C. § 2254 habeas application asserting the dismissal was inconsistent with due process. The district court denied the application. Because we conclude the Missouri appellate court arbitrarily applied the fugitive dismissal rule to dismiss Branch's appeals, we reverse and remand to the district court for issuance of a writ.

In 1986, a jury convicted Branch of the first-degree murder of her husband, but the Missouri Court of Appeals reversed the conviction because of erroneously excluded evidence. *State v. Branch,* 757 S.W.2d 595, 598–601 (Mo.Ct.App.1988). On retrial, a jury again convicted Branch of first-degree murder. The trial court ordered a hearing to consider Branch's motion for a new trial and to sentence her. When Branch, who was free on bail, breached her promise to appear at the hearing, the trial court denied her new trial motion and issued an arrest warrant. *See* Mo.Rev.Stat. § 544.665 (1987). Police officers found Branch in a neighboring county three days later and returned her for sentencing. Four days after Branch was returned, the trial court sentenced her to the mandatory term of life imprisonment without parole eligibility for fifty years.

On the same day the trial court sentenced Branch, she appealed her conviction and sentence. *See id.* § 547.070. Because Branch's appeal was timely filed even if measured from the original sentencing hearing that she missed, Branch's three-day absence caused no delay to the commencement of appellate proceedings. *See* Mo.S.Ct.R. 30.01(d) (notice of appeal must be filed within ten days of final judgment). Based on asserted errors during her second trial, Branch also filed a timely motion for postconviction relief, which the trial court denied. Branch appealed this order as well. *See* Mo.S.Ct.R. 29.15(j). The Missouri Court of Appeals consolidated Branch's direct appeal and her postconviction appeal. *See* Mo.S.Ct.R. 29.15(*l*). Although both parties fully briefed and orally argued the case's merits before the Missouri Court of Appeals, the appellate court dismissed the consolidated appeals under the Missouri fugitive dismissal rule.

The Missouri Supreme Court first applied the fugitive dismissal rule more than one hundred years ago. *See State v. Carter,* 11 S.W. 979 (Mo.1889). In *Carter,* the court dismissed the appeal of a sentenced defendant who escaped after filing the appeal because the defendant's escape prevented the court from rendering an enforceable judgment and the court would not permit the fugitive to trifle with the court's operations in this way. *Id.* at 980. Since *Carter,* Missouri appellate courts have used the fugitive dismissal rule to protect themselves from defendants whose fugitive activity delays, disrupts, or distracts the courts' proper operation. *See State v. Kearns,* 743 S.W.2d 553, 554–55 (Mo.Ct.App.1987). In recent years, the Missouri appellate courts have expanded the rule to dismiss the appeals of convicted defendants who failed to appear for sentencing, but were returned to the trial court and sentenced before filing an appeal. *See, e.g., id.* (dismissing defendant's appeal after defendant's six-year absence from trial court caused administrative complications in appel-

late court and would prejudice state on retrial); *State v. Wright*, 763 S.W.2d 167, 168 (Mo.Ct.App.1988) (dismissing defendant's appeal after defendant's five-month flight delayed filing of the appeal). Missouri appellate courts recognize that the fugitive dismissal rule's use discourages unlawful flight, promotes the dignity of appellate court proceedings, and preserves respect for the legal system. *Robinson v. State*, 854 S.W.2d 393, 395 (Mo.1993) (en banc); *Wright*, 763 S.W.2d at 168.

Without suggesting that Branch's failure to appear interfered with the appellate process, threatened any appellate court functions, or otherwise had any effect on its orderly operation, the Missouri Court of Appeals invoked the fugitive dismissal rule and dismissed Branch's consolidated appeals. *State v. Branch*, 811 S.W.2d 11, 12 (Mo.Ct. App.1991). The court held that Branch's "fail[ure] to appear as ordered for sentencing," by itself, "operates to disentitle [Branch's] right of appeal." *Id.* at 11, 12. The only explanation the court gave for the dismissal was preservation of public respect for Missouri's system of law. In response to Branch's federal habeas application, the State suggests the Missouri appellate court's dismissal of Branch's appeals also furthers the State's interest in deterring trial court disappearances. The district court concluded the dismissal of Branch's appeals did not violate Branch's due process rights.

. Branch does not challenge the constitutionality of Missouri's fugitive dismissal rule. Rather, Branch contends the Missouri appellate court arbitrarily applied the rule to her because dismissing her appeals in the circumstances of her case does not advance any of the rule's purposes. Branch points out that her failure to appear at the original sentencing hearing, three-day absence, and return to custody for sentencing all took place before she filed her notice of appeal, which was timely even if measured from her original sentencing date. Because Branch's flight had no effect on appellate processes, Branch contends the appellate court violated her due process rights by dismissing her appeals under the fugitive dismissal rule. We agree.

■ Before discussing the merits, we first consider a threshold issue: whether we must apply the nonretroactivity principle of *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality opinion), to Branch's contention. *See Caspari v. Bohlen*, — U.S. —, —, 114 S.Ct. 948, 953, 127 L.Ed.2d 236 (1994). The nonretroactivity principle prevents a federal court from granting habeas relief to a state prisoner based on a rule announced after the prisoner's conviction and sentence become final. *Id.* Because the principle is not jurisdictional, a federal court may decline to apply it if the state does not argue it. *Id.* Put another way, a state can waive the nonretroactivity principle by failing to raise it. *Schiro v. Farley*, — U.S. —, — — —, 114 S.Ct. 783, 788–89, 127 L.Ed.2d 47 (1994).

■ Missouri waived *Teague*'s nonretroactivity principle in responding to Branch's appeal. Missouri mentions the principle only twice in its brief. In the procedural history section, Missouri states that it raised the *Teague* principle in the district court. Missouri later mentions the principle in a one-sentence footnote buried on the last page of the state's lone argument—that the district court properly rejected Branch's due process claim on the merits. Missouri did not mention the nonretroactivity principle or cite *Teague* in its statement of the issues on appeal, and did not develop the *Teague* issue with supporting argument in its brief. Under these circumstances, Missouri waived our consideration of the *Teague* issue. *See Larson v. Nutt*, 34 F.3d 647, 647–648 (8th Cir. 1994) (per curiam) (skeletal assertion does not raise issue on appeal); *Laborers' Int'l Union of N. Am. v. Foster Wheeler Corp.*, 26 F.3d 375, 398 (3d Cir.1994) (passing reference to issue without discussion does not bring issue before court), *cert. denied*, — U.S. —, 115 S.Ct. 356, — L.Ed.2d — and — U.S. —, 115 S.Ct. 357, — L.Ed.2d — (1994); *United States v. Pan-et–Collazo*, 960 F.2d 256, 261 n. 3 (1st Cir.) (issues mentioned in a perfunctory way without developed argument deemed waived), *cert. denied*, — U.S. —, 113 S.Ct. 220, 121 L.Ed.2d 158 *and cert. denied*, — U.S. —,

113 S.Ct. 645, 121 L.Ed.2d 574 (1992). We thus decline to consider whether granting habeas relief to Branch requires the retroactive application of a new rule in violation of *Teague.*

■ As we turn to the merits of Branch's appeal, we make a preliminary observation. In her habeas petition, Branch pleaded a blanket due process claim. The district court analyzed Branch's claim under procedural due process principles, and the parties' briefs on appeal focus on procedural due process. Nevertheless, at oral argument both parties acknowledged this is really a substantive due process case. Because we believe our refusal to consider the substantive due process question would be inconsistent with substantial justice, we exercise our discretion to consider this question of law on appeal. *See Hormel v. Helvering,* 312 U.S. 552, 557, 61 S.Ct. 719, 721–22, 85 L.Ed. 1037 (1941); *Seniority Research Group v. Chrysler Motor Corp.,* 976 F.2d 1185, 1187 (8th Cir.1992); *Cleland v. United States,* 874 F.2d 517, 522 n. 6 (8th Cir.1989).

■ Branch initially concedes the federal constitution does not guarantee state criminal defendants the right to appeal. Both Branch and the State agree, however, that in integrating an appellate process into Missouri's criminal justice system, the state's appellate procedures must comply with the Due Process Clause of the federal constitution's Fourteenth Amendment. *Evitts v. Lucey,* 469 U.S. 387, 393, 105 S.Ct. 830, 834, 83 L.Ed.2d 821 (1985); *see Bell v. Lockhart,* 795 F.2d 655, 657 (8th Cir.1986). The Due Process Clause contains a substantive component that protects individuals from government action that is arbitrary, *Daniels v. Williams,* 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986), conscience-shocking, *Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 209–10, 96 L.Ed. 183 (1952), oppressive in a constitutional sense, *DeShaney v. Winnebago County Dep't of Social Servs.,* 489 U.S. 189, 196, 109 S.Ct. 998, 1003, 103 L.Ed.2d 249 (1989), or interferes with fundamental rights, *United States v. Salerno,* 481 U.S. 739, 746, 107 S.Ct. 2095, 2101, 95 L.Ed.2d 697 (1987). *See Lowrance v. Achtyl,* 20 F.3d 529, 537 (2d Cir.1994) (to same effect). Thus, in a case like this, a state appellate court cannot deny the right to appeal

through the arbitrary application of an appellate rule. *Evitts,* 469 U.S. at 404–05, 105 S.Ct. at 840–41; *Allen v. Duckworth,* 6 F.3d 458, 459–60 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1106, 127 L.Ed.2d 417 (1994); *Olson v. Hart,* 965 F.2d 940, 943 (10th Cir.1992). In keeping with due process, state appellate courts must apply their rules governing appellate review in a way that provides "a fair opportunity to obtain an adjudication on the merits of [an] appeal." *Evitts,* 469 U.S. at 405, 105 S.Ct. at 841. The parties do not dispute that these principles apply equally to Branch's postconviction appeal.

■ Although the state-granted right to appeal must be administered within the boundaries of due process, the right may be denied to accommodate other legitimate appellate interests. It is well settled that a state may, consistent with the federal constitution, dismiss the appeal of a defendant who is a fugitive during the pendency of the defendant's appeal. *See Allen v. Georgia,* 166 U.S. 138, 17 S.Ct. 525, 41 L.Ed. 949 (1897) (upholding state's dismissal of appeal of defendant who escaped and was recaptured during appeal); *Estelle v. Dorrough,* 420 U.S. 534, 95 S.Ct. 1173, 43 L.Ed.2d 377 (1975) (upholding state statute providing for appellate dismissal when defendant escapes during pendency of appeal). We also see no constitutional impediments for a state appellate court to dismiss a defendant's appeal simply because the defendant's fugitive status begins and ends during trial court proceedings. A defendant's pre-appeal flight may cause delay in appellate proceedings, disrupt an appellate court's scheduling, interfere with orderly appellate review, or prejudice the state on retrial. If a defendant's pre-appeal flight disturbs the orderly operation of a state appellate court, we believe the sanction of dismissal is justified. *See Ortega–Rodriguez v. United States,* —— U.S. ——, ——, 113 S.Ct. 1199, 1208, 122 L.Ed.2d 581 (1993) (reviewing application of Eleventh Circuit's fugitive dismissal rule under supervisory power of federal courts); *id.* at ——, 113 S.Ct. at 1211 (Rehnquist, C.J., dissenting). When a state appellate court vindicates the intrusion on its processes by applying the

fugitive dismissal rule, the dismissal deters fugitive activity and promotes respect for the judicial system. *See id.* at ——, 113 S.Ct. at 1207 (majority opinion); *id.* at ——, 113 S.Ct. at 1212 (Rehnquist, C.J., dissenting).

If a defendant's pre-appeal flight does not adversely affect the appellate process, however, there is no rational justification for a state appellate court to strip the defendant of the right to appeal under the fugitive dismissal rule. *See Woods v. Kemna,* 13 F.3d 1244, 1246 (8th Cir.1994). The fugitive dismissal rule is not an end in itself; instead, it is the means of protecting the appellate interests served by the rule. To use the rule as a general tool of deterrence and respect when appellate interests are not affected divorces the rule from its purpose of protecting appellate courts and arbitrarily transforms the rule from one triggered by appellate consequences into one of automatic dismissal and additional punishment for pre-appeal flight. *See* Mo.Rev.Stat. § 544.665 (failure to appear in trial court as ordered is punishable as felony). Thus, our inquiry focuses on whether Branch's misconduct had any effect on Missouri appellate procedures, justifying an appellate dismissal.

Neither the Missouri Court of Appeals nor the State suggests that Branch's failure to appear for sentencing in the trial court and three-day flight had any effect on the appellate system. Because the State was forced to locate, capture, and return Branch for sentencing, the short duration of Branch's flight alone does not mitigate against the rule's application. Nevertheless, Branch's abbreviated absence did not delay the onset of appellate proceedings, inconvenience the appellate court's operation, or disrupt appellate processes. Branch filed her appeal within the ten-day limit measured from the sentencing date she missed. Furthermore, the appellate court did not suggest (and the State does not contend) that Branch's flight would prejudice the State's ability to retry Branch if she prevailed on appeal.

In short, Branch's fugitive status did not trigger any of the appellate consequences the fugitive dismissal rule is designed to protect against, and thus, the Missouri appellate court had no justification to use the rule as an instrument of deterrence and respect. In these circumstances, the Missouri appellate court's misuse of the rule to dismiss Branch's appeals runs against the grain of due process. Indeed, Branch prevailed on her first direct criminal appeal, and neither the Missouri appellate court nor the State suggests that her current appeals are legally frivolous. Thus, the appellate court's dismissal, based on nothing more than Branch's failure to appear as ordered for sentencing, is clearly at odds with Missouri's recognition that a convicted defendant's liberty should not be curtailed "unless a second judicial decisionmaker, the appellate court, was convinced that the conviction was in accord with law." *Evitts,* 469 U.S. at 403–04, 105 S.Ct. at 840. In our view, the court deprived Branch of the fair opportunity to obtain a decision on the merits of her appeals in violation of her due process rights.

We reverse the district court's judgment and remand with directions to grant the writ unless the State takes steps to consider the merits of Branch's consolidated appeals within a reasonable time fixed by the district court.

BOWMAN, Circuit Judge, dissenting.

I respectfully dissent from the Court's holding that the state, in applying its escape rule to Branch, has violated her right to substantive due process.

The Missouri legislature first announced in 1835 that, upon a criminal conviction, "an appeal to the supreme court shall be allowed," subject to certain procedural requirements. Mo.Rev.Stat. at 498 § 1 (1835). In 1889, the Missouri Supreme Court further modified the statutory right to appeal and adopted the common-law escape rule, noting that an escaped convict "is in contempt of the authority of the court and of the law" and "[t]o permit such a course of conduct to be successful would be trifling with justice, and will not be tolerated," regardless that the state might bring in the prisoner via a capias warrant. *State v. Carter,* 98 Mo. 431, 11 S.W. 979, 980 (1889). Subsequently, the United States Supreme Court upheld the constitutionality of the escape rule. *Allen v.*

*Georgia*, 166 U.S. 138, 140–41, 17 S.Ct. 525, 526–27, 41 L.Ed. 949 (1897). Recognizing its own limits in a case challenging the powers reserved to the states, the Court said, "[I]f the supreme court of a state has acted in consonance with the constitutional laws of a state and its own procedure, it could only be in very exceptional circumstances that this court would feel justified in saying that there had been a failure of due legal process." *Id.* at 140, 17 S.Ct. at 526. The rule as it has developed in Missouri is still viable today. *See State v. Peck*, 652 S.W.2d 244, 245 (Mo. Ct.App.1983) ("Missouri has long had the rule that a defendant who escapes or flees the jurisdiction of its courts either during trial or in the process of post-trial proceedings forfeits his rights to an appeal upon the merits of the cause.").

Branch does not challenge the constitutionality of the escape rule per se. The only issue before this Court on appeal from the District Court's denial of the writ is whether Missouri violates a defendant's due process rights[1] by dismissing an appeal under the common-law escape rule when the fleeing defendant is recaptured three days after failing to appear for sentencing, and before she has filed her notice of appeal.

I begin with the undisputed fact that the Constitution does not compel the states to offer an appeal as of right to criminal defendants upon conviction. *Evitts v. Lucey*, 469 U.S. 387, 393, 105 S.Ct. 830, 834, 83 L.Ed.2d 821 (1985). But "when a State opts to act in a field where its action has significant discretionary elements, it must nonetheless act in

accord with the dictates of the Constitution— and, in particular, in accord with the Due Process Clause." *Id.* at 401, 105 S.Ct. at 839. In addition to the better-known (and better-understood) concept of procedural due process, the Supreme Court has recognized the concept of substantive due process, which "prevents the government from engaging in conduct that 'shocks the conscience' or interferes with rights 'implicit in the concept of ordered liberty.'" *United States v. Salerno*, 481 U.S. 739, 746, 107 S.Ct. 2095, 2101, 95 L.Ed.2d 697 (1987) (citations omitted). Notwithstanding the uncertain scope of substantive due process,[2] I believe the Court misapplies the concept in this situation to justify granting the writ.

Considering the second substantive due process test first, if state action encroaches upon a fundamental right, then "the infringement [must be] narrowly tailored to serve a compelling state interest. 'Substantive due process' analysis must begin with a careful description of the asserted right...." *Reno v. Flores*, —— U.S. ——, ——, 113 S.Ct. 1439, 1447, 123 L.Ed.2d 1 (1993) (citations omitted). As noted above, there is no fundamental right "implicit in the concept of ordered liberty" implicated here—that is, no right to appeal a criminal conviction is in the text of the Constitution and such a right has not been discovered in the "emanations" from that document. The Court's opinion does not so assert. Therefore, it is unnecessary to consider whether Missouri's interests in the escape rule are compelling or whether the escape rule is narrowly tailored to serve

---

1. As the opinion of the Court suggests, *ante* at 374, it is rather clear that Branch's broad assertion of a due process violation, as set forth in her petition for the writ, did not properly raise the substantive due process issue in the District Court. It was not a subject of discussion in the court's denial of the writ. Moreover, the argument Branch makes in her brief is a procedural due process argument. *See* Brief of Appellant at 10–12. It was not until prodded by this Court at oral argument that counsel for Branch acknowledged he was advancing an argument based on substantive due process. Thus the issue may not be properly before this Court in the first instance, and I do not agree that "our refusal to consider the substantive due process question would be inconsistent with substantial justice." *Ante* at 375. Nevertheless, because the Court bases its decision on substantive due process, I respond

with this dissent addressing the merits of Branch's putative substantive due process claim.

2. Although the Court regularly proceeds on the assumption that the Due Process Clause has more than a procedural dimension, we must always bear in mind that the substantive content of the Clause is suggested neither by its language nor by preconstitutional history; that content is nothing more than the accumulated product of judicial interpretation of the Fifth and Fourteenth Amendments.
*Regents of the Univ. of Mich. v. Ewing*, 474 U.S. 214, 225–26, 106 S.Ct. 507, 513–14, 88 L.Ed.2d 523 (1985) (quoting *Moore v. City of E. Cleveland, Ohio*, 431 U.S. 494, 543–44, 97 S.Ct. 1932, 1958–59, 52 L.Ed.2d 531 (1977) (White, J., dissenting)).

those interests. Because no fundamental right is implicated, there is no justification for the Court's finding a federal constitutional violation here merely because Missouri's appellate process is not adversely affected by Branch's escape.

As for the other substantive due process test, which presumably becomes relevant in the absence of a fundamental right, Missouri's escape rule as applied to Branch does not shock the conscience. *Cf. Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 209–10, 96 L.Ed. 183 (1952) (concluding that pumping the stomach of a suspect in the search for evidence "shocks the conscience"). It does not shock the conscience for Missouri to apply a rule that strips a criminal defendant of her statutory (not constitutional) right to appeal her conviction when she chooses to show contempt for the courts and the laws of the state by failing to appear for sentencing after her conviction by a jury. It does not shock the conscience for the Missouri courts to conclude that "[t]hose who seek the protection of this legal system must ... be willing to abide by its rules and decisions" or else forfeit its protections. *State v. Wright,* 763 S.W.2d 167, 168–69 (Mo. Ct.App.1988). It does not shock the conscience to punish a fleeing felon, subject to imprisonment for life, by divesting her of the statutory appeal process that otherwise would be available to her, rather than to punish her indiscernibly by adding prison time for contempt onto a life sentence. It does not shock the conscience to deprive a convicted felon who has taken it on the lam of her right to appeal her conviction in order to deter others from flaunting the law and putting the system to the expense and effort of finding fleeing felons and returning them to the jurisdiction of the court, regardless of the length of time they may be missing.

I do not agree that the escape rule as applied to Branch is "arbitrary" or without a "rational justification," as the Court's opinion, *ante* at 375, 376, asserts, but those are not substantive due process tests in any event. The case upon which the Court relies for the "arbitrary" standard does in fact quote the word in passages found in Supreme Court cases that describe state actions pro-

hibited by the Due Process Clause, but it is clear that in the cases quoted (both from the 1880's) the term was used in connection with procedural due process rights (to criminal indictment) or with fundamental rights (to pursue a lawful profession). *Daniels v. Williams,* 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986). In any case the Supreme Court cited those cases in dicta for a purpose unrelated to. determining substantive due process violations. In its discussion of substantive due process protections further on, the *Daniels* Court cites *Rochin,* where the Court set forth the "shocks the conscience" standard. *Id.* In any event, in the. very same term the Court recognized that it "has no license to invalidate legislation [under substantive due process] which it thinks merely arbitrary or unreasonable." *Regents of the Univ. of Mich. v. Ewing,* 474 U.S. 214, 226, 106 S.Ct. 507, 513, 88 L.Ed.2d 523 (1985) (quoting *Moore v. City of E. Cleveland, Ohio,* 431 U.S. 494, 544, 97 S.Ct. 1932, 1958, 52 L.Ed.2d 531 (1977) (White, J., dissenting)); *cf. Collins v. City of Harker Heights, Tex.,* —— U.S. ——, ——, 112 S.Ct. 1061, 1070, 117 L.Ed.2d 261 (1992) (holding that alleged omission by city could not "properly be characterized as arbitrary, or conscience-shocking, in a constitutional sense"). In *Salerno,* 481 U.S. at 746, 107 S.Ct. at 2101, decided two years later, the Court made no mention of an "arbitrary" standard in setting out what sort of government actions may constitute a violation of substantive due process rights.

The Court's analysis here apparently is drawn from the Supreme Court's opinion in *Ortega–Rodriguez v. United States,* —— U.S. ——, 113 S.Ct. 1199, 122 L.Ed.2d 581 (1993), rather than from constitutional jurisprudence. The *Ortega–Rodriguez* Court concluded that, "when a defendant's flight and recapture occur before appeal, the defendant's former fugitive status may well lack the kind of connection to the appellate process that would justify an appellate sanction of dismissal." *Id.* at ——, 113 S.Ct. at 1209. The *Ortega–Rodriguez* decision, however, was an exercise of the Supreme Court's supervisory power over the lower federal courts and, as no constitutional claims were considered in the case, the rationale of the

decision is irrelevant to a proper adjudication of the present case. It is of no consequence to the constitutionality of state procedures that the United States Supreme Court has used its supervisory power to limit the scope of the federal common-law escape rule. "[T]he right of appeal may be accorded by the state to the accused upon such terms as in its wisdom may be deemed proper.... [W]hether an appeal should be allowed, and, if so, under what circumstances, or on what conditions, are matters for each state to determine for itself." *McKane v. Durston*, 153 U.S. 684, 687–88, 14 S.Ct. 913, 915, 38 L.Ed. 867 (1894). Absent a constitutional violation, the principles of federalism require this Court to accept Missouri's escape rule as formulated by Missouri's courts. *See Allen*, 166 U.S. at 140–41, 17 S.Ct. at 526 ("We might ourselves have pursued a different course in this case, but that is not the test. The [appellant] must have been deprived of one of those fundamental rights, the observance of which is indispensable to the liberty of the citizen, to justify our interference."). *Ortega–Rodriguez* thus has relevance only to the extent it may influence the Missouri Supreme Court in the exercise of its supervisory authority over Missouri's escape rule. *See Robinson v. State*, 854 S.W.2d 393, 395 n. 2 (Mo.1993) (en banc) (suggesting the possibility of that court's reviewing Missouri's escape rule in light of *Ortega–Rodriguez*, but noting the issue had not yet come before it).

In the absence of a federal constitutional violation, this Court cannot grant habeas relief. Neither Branch nor the Court has described such a violation. We must resist the temptation to find in the Constitution a license to write into law our personal vision of how things ought to be. Fidelity to the Constitution demands, among other things, that we scrupulously refrain from asserting powers the Constitution, properly understood, does not give us. I would affirm the District Court's denial of the writ.