STATE of Missouri, Appellant,

v.

Kenneth L. MAYO, Respondent.

Mary Kristen BECKER, Respondent,

v.

DIRECTOR OF REVENUE, Appellant.

Nos. 78298, 78335.

Supreme Court of Missouri,
En Banc.

Feb. 20, 1996.

759

Jeremiah W. (Jay) Nixon, Attorney General, Jefferson City, Philip M. Koppe, Assistant Attorney General, Kansas City, James A. Chenault, III, Sp. Assistant Attorney General, Missouri Department of Revenue, Jefferson City, for appellant.

W. Stephen Nixon, Independence, Bob J. Hiler, Kansas City, for respondent Mayo.

Michael J. Gorla, St. Louis, for respondent Becker.

LIMBAUGH, Judge.

In these two cases, consolidated on the Court's own motion, the State appeals the dismissal of its criminal prosecution against respondent Kenneth Mayo for driving while intoxicated, and the Director of Revenue (Director), having suspended Mary Becker's driving privileges, appeals an order reinstating those privileges. The trial court in both cases ruled that the proceedings violated the Double Jeopardy Clause of the Fifth Amendment. We now reverse and remand both cases.

The facts of these cases are not in dispute and need only to be stated briefly.

On September 16, 1994, respondent Kenneth Mayo was charged with the crime of driving while intoxicated (DWI) in violation of § 577.010, RSMo 1994. The Director, in a separate administrative action, revoked Mayo's driver's license for one year effective December 4, 1994, pursuant to § 302.500, RSMo 1994, et seq. Thereafter, on March 3, 1995, Mayo filed a motion to dismiss the criminal proceeding. As grounds for the motion, Mayo contended that in view of the prior license revocation, the criminal proceeding violated the Double Jeopardy Clause

of the Fifth Amendment. The trial court sustained Mayo's motion and dismissed the action. The State appealed to the Court of Appeals, Western District, and this Court granted transfer prior to opinion. *Rule 83.06.*

In the second case, respondent Mary Becker was also charged with DWI in violation of § 577.010. She entered a plea of guilty on September 7, 1994, and was placed on probation for two years. In a separate action, the Director suspended Becker's driving privileges according to § 302.500, et seq. Becker then filed a petition for a trial de novo in the Circuit Court of Franklin County to contest the suspension. Prior to trial, Becker filed a motion asserting that the suspension violated the Double Jeopardy Clause and requesting reinstatement of her license. When the trial court sustained the motion, the Director appealed to the Court of Appeals, Eastern District. This Court granted transfer prior to opinion. *Rule 83.06.*

The State and the Director raise two points on appeal: (1) that the revocation or suspension of a driver's license does not violate the Double Jeopardy Clause because it does not constitute additional punishment, and (2) that even if the revocation of a driver's license is punishment, it does not violate the Double Jeopardy Clause because it is not imposed for the "same offense" under the test set out in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Because this Court finds the first point dispositive, we do not reach the second point.

■ The Double Jeopardy Clause of the Fifth Amendment states, "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb...." U.S. Const., Amend. V. Three distinct abuses are prevented by the Double Jeopardy Clause: (1) a subsequent prosecution for the same offense after acquittal; (2) a subsequent prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *United States v. Halper,* 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989) (citing *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072,

2076, 23 L.Ed.2d 656 (1969)). Only the third of these protections is at issue in these cases. Obviously, the criminal sanctions imposed under § 577.010—incarceration and/or fine—are punishment within the meaning of the Double Jeopardy Clause. However, to characterize the civil revocation of an individual's driver's license as "punishment" is problematic.

■■■ Whether a proceeding is labeled as civil or criminal is "not of paramount importance" because both criminal and civil sanctions may serve remedial and punitive goals at the same time. *Halper,* 490 U.S. at 447, 109 S.Ct. at 1901. The determination of whether a particular sanction involves a punishment that violates the Double Jeopardy Clause "requires a particularized assessment of the penalty imposed and the purposes that the penalty may fairly be said to serve. Simply put, a civil ... sanction constitutes punishment when the sanction as applied in the individual case serves the goals of punishment." *Id.* at 448, 109 S.Ct. at 1901–02. Those goals are "the twin aims of retribution and deterrence." *Id.*

The sanctions imposed in *Halper* are illustrative. Defendant was convicted under the criminal false-claims statute, 18 U.S.C. § 287, for submitting 65 falsified Medicare claims. *Id.* at 437, 109 S.Ct. at 1896. He was sentenced to two years in prison and fined $5,000. *Id.* The total amount that Halper had overcharged the government was $585. *Id.* Subsequent to his criminal conviction, the government brought a civil action under the False Claims Act, 31 U.S.C. §§ 3729–3731, which mandated a fine against Halper of $130,000, a figure over 220 times greater than the government's measurable loss. *Id.* at 438–39, 109 S.Ct. at 1896–97. On appeal, the Supreme Court held that the disparity between the District Court's approximation of the government's expenses and the mandated fine was so large that the fine constituted a second punishment. *Id.* at 452, 109 S.Ct. at 1904.

■■■ In reaching that conclusion, the Court set forth seemingly conflicting analyses for determining when civil sanctions constitutes punishment. First, the Court stated:

From these premises, it follows that a civil sanction that cannot fairly be said *solely* to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term.

*Id.* at 448, 109 S.Ct. at 1902 (emphasis added). In the very next sentence, however, the Court stated:

We therefore hold that under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but *only* as a deterrent or retribution.

*Id.* at 448–49, 109 S.Ct. at 1902 (emphasis added). Respondents Mayo and Becker, drawing on the first sentence, contend that a civil sanction is punishment unless it serves solely a remedial purpose. The State and the Director rely on the second sentence for the proposition that a civil sanction is punishment if it serves *only* as a deterrent or as retribution. The difference is critical: If license revocation or suspension is both remedial and punitive, it is not solely remedial, and under respondents' version of *Halper,* the sanction is punishment.

The confusion is exacerbated by two subsequent United States Supreme Court cases that refer to *Halper: Austin v. United States,* 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993); and *Department of Revenue of Montana v. Kurth Ranch,* —— U.S. ——, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994). Neither case, however, expressly addresses the conflict shown above.

In *Austin,* the Supreme Court again confronted the issue of whether civil sanctions constitute punishment, this time in the context of the Excessive Fines Clause of the Eighth Amendment. Defendant Austin pled guilty to state charges of possessing cocaine with intent to distribute and was sentenced to seven years imprisonment. *Id.,* 113 S.Ct. at 2803. Thereafter, the United States filed an *in rem* action seeking forfeiture of Austin's mobile home and auto body shop. *Id.* In response to the contention that the forfei-

ture was punishment, and therefore subject to the Excessive Fines Clause, the Court said:

> In considering this question, we are mindful of the fact that sanctions frequently serve more than one purpose. We need not exclude the possibility that a forfeiture serves remedial purposes to conclude that it is subject to the limitations of the Excessive Fines Clause. We, however, must determine that it can only be explained as serving in part to punish. We said in *Halper* that 'a civil sanction that cannot fairly be said to solely serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term.'

*Id.*, 113 S.Ct. at 2806. Applying the foregoing "solely remedial" analysis, the Court held that the forfeiture was punishment that was prohibited under the Excessive Fines Clause because it served not only a remedial purpose but also a deterrent purpose. *Id.* at 2810, 2812, and n. 14.[1]

In *Department of Revenue of Montana v. Kurth Ranch*, —— U.S. ——, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994), a double jeopardy case, the Supreme Court briefly revisited *Halper*. The case involved the State of Montana's imposition of a tax on dangerous drugs. *Id.*, 114 S.Ct. at 1941. Members of the Kurth family had pled guilty to criminal charges of possession of marijuana with intent to sell. *Id.* at 1942. The State then attempted to collect almost $900,000 in taxes on the marijuana. *Id.* at 1942–43. Despite *Austin*, which was handed down just a year earlier, the Supreme Court restated that under *Halper*, punishment means a "sanction

[that] may not fairly be characterized as remedial, but only as a deterrent or retribution." *Id.* at 1945. Having acknowledged *Halper*, the Court then held its analysis was inapplicable to the taxing statutes because taxing statutes, by their nature, serve the non-punitive purpose of raising revenue. *Id.* at 1946, 1948. As the Court tacitly explained, taxing statutes, which have neither a punitive nor a remedial purpose, are different than civil fines in *Halper*, which served, at least in part, the remedial purpose of restitution. To resolve *Kurth Ranch*, the Court compared the Montana taxing statute to standard taxing statutes and concluded that it was so far removed from the revenue raising purpose that it must be punishment. *Id.* at 1948. In short, the Montana tax was punishment, but under different reasoning than the civil sanction in *Halper*.

From a closer reading of *Halper*, itself, we conclude that the Supreme Court did not intend for the "solely remedial" analysis to apply to the revocation or suspension of driving privileges.[2] It is significant that the Court, at the outset of the *Halper* opinion, framed the issue as "whether a civil sanction, in application, may be so divorced from any remedial goal that it constitutes punishment for the purpose of double jeopardy analysis." *Halper*, at 443, 109 S.Ct. at 1899. Implicit in this language is the notion that civil sanctions that are not "so divorced," sanctions that are largely remedial but are in fact partly punitive, do not constitute punishment for double jeopardy purposes. Further, the Court made clear that it was establishing a "rule for the rare case," *id.* at 449, 109 S.Ct. at 1902, which, in effect, precludes the "solely

---

1. Apparently *Austin's* claim was brought under the Excessive Fines Clause because it could not have been brought under the Double Jeopardy Clause. Successive prosecutions by different sovereigns do not violate the Double Jeopardy Clause, *see, e.g., Bartkus v. Illinois*, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959); *Abbate v. United States*, 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959); the criminal prosecution against Austin was a state proceeding, and the forfeiture case was a federal proceeding.

2. Our conclusion is supported by all of the cases from other states that have considered the issue. *See e.g. People v. Lopez*, No. 4–95–0413, 1995 WL

765631, at \*2–4 (Ill.App. Dec. 29, 1995); *People v. Dvorak*, 276 Ill.App.3d 544, 213 Ill.Dec. 120, 658 N.E.2d 869 (1995); *State v. Parker*, 538 N.W.2d 141, 142 (Minn.App.1995); *State v. Hanson*, 543 N.W.2d 84 (Minn.1996); 532 N.W.2d 598, 600–01 (Minn.App.1995); *Ex Parte Tharp*, 912 S.W.2d 887 (Tex.App.1995); *State v. Strong*, 158 Vt. 56, 605 A.2d 510, 512 (1992); *State v. Zerkel*, 900 P.2d 744, 756 (Alaska App.1995); *Johnson v. State*, 95 Md.App. 561, 622 A.2d 199, 202 (1993); *Butler v. Department of Public Safety and Corrections*, 609 So.2d 790, 797 (La.1992); *State v. Nichols*, 169 Ariz. 409, 819 P.2d 995, 998 (Ct.App.1991); *State v. Hickam*, 235 Conn. 614, 668 A.2d 1321 (1995).

remedial" analysis. If the second sanction must be "solely remedial," then cases such as *Halper* would be the rule and not the exception because it would be a rare sanction indeed that was wholly remedial, without the slightest retributive or deterrent effect. Most importantly, what followed *Halper's* "solely remedial" analysis was the actual *holding* of the case. To reiterate, the Court stated:

> We therefore hold that under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but *only* as a deterrent or retribution.

*Id.* at 448–49, 109 S.Ct. at 1902 (emphasis added). The adoption of the "solely remedial" analysis in *Austin* can only be explained by the fact that it involved the Excessive Fines Clause rather than the Double Jeopardy Clause, and fines, of whatever variety, have traditionally been characterized as punishment.

■ Governed by our understanding of *Halper*, we now undertake a "particularized assessment of the penalty imposed and the purposes that the penalty may fairly be said to serve." *Id.* at 448, 109 S.Ct. at 1901. Our determination of whether a sanction serves "the twin aims of retribution and deterrence" is not to be made from the defendant's perspective. *Id.* at 447 n. 7, 109 S.Ct. at 1901 n. 7. Indeed, as the Supreme Court observed, even wholly remedial sanctions may "carry the sting of punishment" for the defendant. *Id.*

■ Initially we note a fundamental difference between the fine levied in *Halper*, the tax statute in *Kurth Ranch*, and the license revocation in this case. A civil fine, like that in *Halper*, is punishment to the extent that it bears no relation to making the government whole. A taxing statute, like that in *Kurth Ranch*, is punishment to the extent that it is too far divorced from its legitimate, non-punitive purpose of raising revenue. On the other hand, a driver's license is a "privilege or a qualified right" that is granted by the state, *Blydenburg v. David*, 413 S.W.2d 284,

289 (Mo. banc 1967), and revocation of such a privilege "is characteristically free of the punitive criminal element." *Helvering v. Mitchell*, 303 U.S. 391, 399, 58 S.Ct. 630, 633, 82 L.Ed. 917 (1938). This does not mean, of course, that license revocation does not in some measure punish the defendant. To be sure, both the cases of this Court and the United States Supreme Court have recognized the dual nature of the driver's license revocation. In *Mackey v. Montrym*, 443 U.S. 1, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979), the Supreme Court described the differing purposes of Massachusetts's summary suspension law as follows:

> First, the very existence of the summary sanction of the statute serves as a deterrent to drunken driving. . . . Third, in promptly removing such drivers from the road, the summary sanction of the statute contributes to the safety of public highways.

*Id.* at 18, 99 S.Ct. at 2621. This Court noted a similar dual nature in two cases handed down on the same day, both of which challenged the constitutionality of the 1983 and 1984 versions of the license revocation statutes. In *Vetter v. King*, 691 S.W.2d 255 (Mo. banc 1985), the Court noted, "The challenged statute gives clear signal that a person's self-induced inebriation may produce swift penalty and retributive justice if he or she also drives." *Id.* at 257. In *Collins v. Director of Revenue*, 691 S.W.2d 246 (Mo. banc 1985), the Court then stated, "It appears to us that the statute was designed to expeditiously remove the most dangerous drunk drivers from Missouri roadways." *Id.* at 252.

Certainly, a remedial purpose is served by removing from Missouri roadways those persons who have abused their driving privilege by driving under the influence of alcohol. Indeed, we believe that this remedial purpose, safety on Missouri roadways, is the overarching purpose of the statute. Further, we do not believe that the sanction is too far divorced from its remedial purpose so that it should be more fairly characterized as punishment. Therefore, this Court holds that the sanction of a license revocation or suspension under § 302.500, *et seq.*, is not pun-

ishment for the purposes of the Double Jeopardy Clause.

Respondents argue that the true punitive purpose of the sanction is shown by the increase of the suspension from thirty days to a year if the defendant has an "alcohol related enforcement contact" within the preceding five years. § 302.525, RSMo 1994. We disagree. The sanction is increased because the defendant has been shown by the prior "alcohol related enforcement contact" to be highly dangerous, and the purpose for increasing the sanction is to ensure greater safety on the highways.

■ Finally, respondents argue that the Double Jeopardy Clause is violated because the license revocation or suspension originates from the same conduct that gives rise to the criminal prosecution. Respondents rely on *Kurth Ranch* for this proposition because imposition of the Montana drug tax was conditioned on the commission of a crime. That circumstance, however, was only one of several factors taken into account in the Court's opinion. The Court stated that Montana's dangerous drug tax was, "[t]aken as a whole, ... a concoction of anomalies, too far-removed in crucial respects from a standard tax assessment to escape characterization as punishment for the purpose of Double Jeopardy analysis." *Kurth Ranch,* —— U.S. at ——, 114 S.Ct. at 1948. The "anomalies" referred to included: 1) the enormously high rate of tax, eight times the market value; 2) the legislature's stated intent to deter drug production, sales, and use; 3) the conditioning of the tax on the commission of a crime; and 4) the imposition of the tax on property the defendant no longer owned. *Id.* at —— –—— and n. 18, 114 S.Ct. at 1946–48 and n. 18. The fact that the "sanction" was conditioned on the commission of a crime was not dispositive in *Kurth Ranch, id.* at —— –——, 114 S.Ct. at 1947–48, nor should it be in this case.

The judgments are reversed, and the cases are remanded for proceedings not inconsistent with this opinion.

All concur.