STATE of Missouri, Plaintiff–
Respondent,

v.

Randy L. BROWN, Defendant–Appellant.

No. 22012.

Missouri Court of Appeals,
Southern District,
Division Two.

Aug. 5, 1998.

Douglas R. Hoff, Asst. Public Defender, St. Louis, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Cheryl A. Caponegro, Asst. Atty. Gen., Jefferson City, for Respondent.

SHRUM, Presiding Judge.

A jury convicted Randy L. Brown (Defendant) of forgery, § 570.090.1(4),[1] a Class C felony. Defendant appeals from that conviction and the sentence imposed. The State moves to dismiss Defendant's appeal based on the "escape rule." We grant the State's motion and dismiss Defendant's appeal.

On July 14, 1997, a Christian County jury convicted Defendant on one count of forgery. After his trial and conviction, Defendant escaped from the Christian County jail on July 20, 1997. He had been scheduled for sentencing on September 15, 1997. After failing to appear on September 15, the trial court issued a capias warrant.

Defendant was arrested in Colorado on October 17, 1997, and was returned to Missouri. On November 19, 1997, he was finally sentenced on his forgery conviction. The trial court found that Defendant was a prior and persistent offender under § 558.016. Defendant was sentenced to a term of fifteen years in the custody of the Department of Corrections.

Defendant appeals his conviction and sentence. The State, however, files a motion to dismiss citing the "escape rule."

The escape rule denies the right of appeal to defendants who, after conviction, attempt to escape justice. *State v. Troupe*, 891 S.W.2d 808, 809[1] (Mo.banc 1995) (citing *State v. Wright*, 763 S.W.2d 167, 168 (Mo. App.1988)). The relevant inquiry for an appellate court to apply the escape rule is "whether the escape adversely affects the criminal justice system." *Troupe*, 891 S.W.2d at 811[5]. The determination of whether the criminal justice system has been

adversely affected rests in the sound discretion of the appellate court. *Id.*

The circumstances of Defendant's escape and capture were similar to the facts of *State v. Thornton*, 930 S.W.2d 54 (Mo.App.1996). In *Thornton*, the defendant escaped from a jail, was at large for over two months, was caught in another state, and had to be returned to Missouri. This court applied the escape rule and dismissed the defendant's appeal. 930 S.W.2d at 57.

Here, Defendant opposes dismissal of his appeal under the escape rule by arguing that the facts here are analogous to those in *State v. Janson*, 964 S.W.2d 552 (Mo.App. 1998). We disagree.

In *Janson*, a defendant released on bond pending sentencing did not appear at his sentencing. However, we declined to apply the escape rule, noting that only the sentencing hearing had to be rescheduled, it was only for a short period that defendant's whereabouts were unknown (15 days), and the record did not show that defendant posed a danger to society or harmed anyone during his escape. 964 S.W.2d at 554[4]. Under those circumstances, we found that the defendant's escape did not adversely affect the criminal justice system. *Id.*

Here, Defendant did more than fail to appear after being released on bond. He escaped from jail, thus raising the possibility of confrontation with the jailer. In this fashion, Defendant showed contempt for the authority of the court and by that, affected the criminal justice system. *See Thornton*, 930 S.W.2d at 56. The system was also adversely affected by (1) Defendant's absence via escape, which lasted for more than two months and caused his sentencing to be delayed from September 15, 1997, to November 19, 1997, and (2) expenditure of public funds to return Defendant to Missouri. *Id.* at 57. Also, Defendant's apparent involvement of another person in his escape plans affected the criminal justice system. Defendant's actions and the effect thereof make application of the escape rule entirely appropriate here.

1. Unless otherwise indicated, all statutory references are to RSMo 1994.

Defendant also argues that application of the escape rule constitutes double jeopardy. According to Defendant, application of the escape rule would twice punish him for his escape because he pled guilty to a charge of escape from confinement in violation of § 575.210 and was sentenced to a term of five years in prison. Defendant invokes the prohibition against double jeopardy found in both the United States [2] and Missouri Constitutions.[3]

Initially, we note that our state constitutional provision (Article I, Section 19) does not technically track the language of the Fifth Amendment, *State v. Bowles*, 754 S.W.2d 902, 907 (Mo.App.1988), and is more limited than the federal provision. *State v. Urban*, 796 S.W.2d 599, 601[1] (Mo.banc 1990). Even so, "judicial glosses over the years, and the applicability of the Fifth Amendment to the States, through the Fourteenth [Amendment], mandate that the principles and glosses on the Fifth, apply to the States." *Bowles*, 754 S.W.2d at 907 (citing *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 2061–63, 23 L.Ed.2d 707 (1969)).[4]

■ Although the double jeopardy clause of the Fifth Amendment mentions only harms to "life or limb," it is well settled that it protects, *inter alia*, an accused from being subjected to multiple punishments for the same offense. *State v. Mayo*, 915 S.W.2d 758, 759[1] (Mo.banc 1996) (citing *United States v. Halper*, 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989)), *cert. denied*, —— U.S. ——, 117 S.Ct. 61, 136 L.Ed.2d 23 (1996). As *Halper* explains, "under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional ... sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or

retribution." 490 U.S. at 448–449, 109 S.Ct. at 1902, 104 L.Ed.2d at 502. However, where the second sanction has a dual nature, i.e., where it is largely remedial but is also partly punitive, the sanction does not constitute punishment for double jeopardy purposes. *Mayo*, 915 S.W.2d at 761.

■ Here, Defendant argues "[t]he purpose of the escape rule is to deter escape, encourage voluntary surrender, and also to encourage respect for the authority of the court." Continuing, Defendant asserts that the escape rule serves only the goals of retribution and deterrence, "with no remedial goal." We disagree.

Missouri courts have advanced many rationales over the years to justify application of the escape rule. *Troupe*, 891 S.W.2d at 810. These justifications include: (1) the need for a court to have control over the defendant before making a decision on appeal; (2) curtailment of administrative problems caused by the defendant's long absence; (3) preventing prejudice to the state in the event of remand for a new trial; (4) preventing defendants from selectively abiding by court decisions; (5) discouraging escape; and (6) encouraging voluntary surrender. *Troupe*, 891 S.W.2d at 810. Other expressed rationales are: (7) preserving respect for the criminal justice system; and (8) promoting the dignified operation of the appellate courts. *Thornton*, 930 S.W.2d at 56.

■ Purely remedial purposes are served when application of the escape rule diminishes administrative burdens, avoids prejudice to the state upon remand, and allows the court to have control over an accused before it reaches a decision on appeal. In other instances, the rationales for the escape rule are remedial in nature but also have

---

**2.** In pertinent part, U.S. Const. amend. V provides: "No person ... shall ... be subject to be twice put in jeopardy of life or limb...."

**3.** The relevant part of Mo. Const. art. I, § 19 (1945) provides: "That no person ... be put again in jeopardy of life or liberty for the same offense, after being once acquitted by a jury...."

**4.** Defendant does not invoke the common rule on double jeopardy that precludes a second punish-

ment for the same offense. *See State v. Treadway*, 558 S.W.2d 646, 651[8] (Mo.banc 1977); *State v. Richardson*, 460 S.W.2d 537, 538 (Mo. banc 1970). "[T]here is no readily discernible difference between the Fifth Amendment guarantee against double jeopardy, enforceable against the states through the Fourteenth Amendment, and the common law guarantee as applied in this State." *Treadway*, 558 S.W.2d at 651[9].

retribution and deterrence aspects, e.g., discouraging escape, preserving respect for the criminal justice system, and promoting the dignified operation of appellate courts. However, the existence of both remedial and punishment aspects does not compel a finding of double jeopardy. Remedial sanctions can "carry the sting of punishment" and still not implicate double jeopardy principles. *Mayo,* 915 S.W.2d at 761–62[6].

■ Based on our supreme court's analysis of the escape rule made in *Troupe,* we are persuaded that the chief justification for the rule is remedial in nature, i.e., to remedy the adverse effects that an escape has on Missouri's criminal justice system. 891 S.W.2d at 810[2]. Further, we do not believe that the sanction of loss of appeal rights is too far removed from its remedial purpose so that it should be more fairly characterized as punishment. *See Mayo,* 915 S.W.2d at 762. We are buttressed in this belief by the fact that "due process does not require a State to provide appellate process at all." *Goeke v. Branch,* 514 U.S. 115, 119, 115 S.Ct. 1275, 1278, 131 L.Ed.2d 152 (1995). Therefore, this court holds that the sanction of dismissing Defendant's appeal is not punishment that implicates double jeopardy principles. Defendant's constitutional claim has no merit.

The State's motion to dismiss is sustained and Defendant's appeal is dismissed.

GARRISON, C.J., and MONTGOMERY, J., concur.