**STATE of Missouri, Respondent,**

v.

**Tom V. BURK, Appellant.**

**No. WD 58189.**

Missouri Court of Appeals, Western District.

Submitted Feb. 14, 2001.

Decided June 5, 2001.

Craig A. Johnston, Asst. Public Defender, Columbia, for Appellant.

Philip M. Koppe, Asst. Atty. Gen., Kansas City, for Respondent.

Before LAURA D. STITH, P.J.,[1] JAMES M. SMART, JR., and VICTOR C. HOWARD, JJ.

PER CURIAM:

Tom V. Burk appeals his conviction by a Johnson County jury on charges of first degree armed robbery and armed criminal action. We dismiss the appeal.

Burk was convicted of committing an armed bank robbery at the Bank of Holden in Warrensburg, Missouri, along with two other men, on the afternoon of June 9, 1998, and escaping with more than $14,000.00 in cash. After a pursuit that lasted less than an hour, Burk and the two other suspects were taken into custody. He was convicted of first degree robbery and armed criminal action, and sentenced as a prior and persistent offender under § 588.016.3, RSMo 2000, to life imprisonment and 15 years imprisonment respectively, to be served concurrently.

Burk now appeals his conviction and sentence on two grounds: (1) that the trial court was in error in amending his sentence to designate his two sentences to run "consecutively" when "consecutive sentences" was never pronounced in his presence as required by Missouri law;[2] and (2) that the judge was in error in not *sua sponte* recusing himself from the trial when he was aware that he was biased against the defendant to the point that he could not serve as an unbiased arbiter at trial and could not sentence Burk impartially.

**Motion to Dismiss**

The state initially moves to dismiss the appeal because, after his conviction and sentencing, Burk escaped from custody. He was at large for five days before his apprehension. The state argues that Burk's escape "adversely affected" the criminal justice system in that it "necessi-

---

1. Judge Stith participated in the case at the time of submission as a member of the court and was specially assigned to remain on this case by order of the Supreme Court after her appointment to the Supreme Court.

2. Our review of the judgment does not show that the sentences are consecutive. The state agrees that the sentences are to be served concurrently, and, according to the state, the records of the Department of Corrections show that the sentences are concurrent. Hence, this point would appear to be moot.

tated the formation and execution of an immediate, extensive, five-day manhunt that required the utilization of numerous law enforcement officers from multiple jurisdictions." And, this "depletion of state resources would have been unnecessary and the expenditure of manpower and money could have been used for other purposes, but for the appellant's escape and the massive efforts required to effectuate his recapture."

■ The state argues, further, that Burk's escape displayed his utter contempt for the authority of the courts, from which he now seeks relief, and a complete lack of respect for the criminal justice system; posed a threat to those around him; and necessitated his capture by force in that he did not voluntarily surrender even after a gunshot was fired. There is no rebuttal from Burk to the state's arguments in support of its motion to dismiss. The relevant inquiry in applying the escape rule "is whether the escape adversely affects the criminal justice system.... This determination is left to the sound discretion of the appellate tribunal." *State v. Troupe*, 891 S.W.2d 808, 811 (Mo. banc 1995).

### Analysis

■ In the leading Missouri case on the "escape rule," *State v. Troupe*, 891 S.W.2d 808 (Mo. banc 1995), the Supreme Court established the standard for the application of the escape rule in Missouri. In *Troupe*, the appellant had been charged

with one count of illegal possession of heroin. *Troupe*, 891 S.W.2d at 809. On the second day of trial, the appellant was present in the courtroom for the closing arguments, but when the jury returned with a verdict of guilty, appellant was absent from the courthouse. *Id.* The court sentenced appellant in absentia as a persistent drug offender and a class X offender. *Id.* The appellant was not returned to custody until eight months later. *Id.*

Upon granting transfer from the Eastern District,[3] the Supreme Court explained that the escape rule operates to deny the right of appeal to a defendant who escapes justice, and that a defendant who flees justice also loses the opportunity to seek postconviction relief. *Id.* Noting the appellant's reliance upon *Ortega-Rodriguez v. United States*, 507 U.S. 234, 113 S.Ct. 1199, 122 L.Ed.2d 581 (1993),[4] and his claim that the application of the escape rule to his case was contrary to law and deprived him of his constitutional rights, the Supreme Court dismissed those arguments. *Id.*

The Court stated that although application of the escape rule requires a relationship between the escape and prejudice to the criminal justice system, the Court did not agree that the rule may be applied by an appellate court *only* when the appellate process itself is substantially prejudiced. *Id.* at 810. The Court then recited the various rationales[5] that Missouri courts

---

3. The Eastern District had dismissed Troupe's direct appeal, but not the appeal of the denial of his post-conviction motion.

4. In *Ortega–Rodriguez v. United States*, 507 U.S. 234, 113 S.Ct. 1199, 122 L.Ed.2d 581 (1993), the U.S. Supreme Court indicated that the escape rule should not be automatically applied by appellate courts when the escape occurs prior to sentencing and has no impact on the appellate process. The Supreme Court decided *Ortega–Rodriquez* in the exercise of its

supervisory power over the federal courts and not on the basis of constitutional principle. 507 U.S. 234, 113 S.Ct. at 1205.

5. Those rationales include: the need for a court to retain control over the defendant before rendering its decision on appeal; the need to prevent administrative problems caused by the defendant's long absence; the need to prevent the "almost certain prejudice to the state in the event of a remand for a new trial" caused by the extended delay; and the

have used to justify application of the escape rule based, primarily, upon the adverse effect an escape has on Missouri's criminal justice system. *Id.* Quoting *State v. Wright,* 763 S.W.2d 167, 168–69 (Mo. App.1988), the Court stated:

> Those who seek the protection of this legal system must ... be willing to abide by its rules and decisions. [The defendant] comes before this court seeking vindication of her Fourth Amendment rights. Earlier, however, when she absconded she showed her reluctance to accept the decision of the trial court or to await the vindication of her rights by this court. She may not selectively abide by the decisions of the courts. By absconding, she has forfeited her right to appeal.

*Id.*

The appellant's escape and eight month adventure on the lam in *Troupe* hindered the administration of justice. *Id.* "It strains credulity to postulate that such a delay does not have an adverse impact on the criminal justice system and the state's case," the Court stated. *Id.* at 811.

In considering the United States Supreme Court's reasoning in *Ortega–Rodriguez,* the Court stated:

> In escaping from custody, whether before or after filing a notice of appeal, a defendant flouts the authority of the courts. *Ortega-Rodriguez,* which permits dismissal pursuant to the [federal] fugitive from justice rule only if the escape had "a significant interference with the operation of [the] appellate process," *Ortega–Rodriguez,* 507 U.S. 234, 113 S.Ct. at 1209, 122 L.Ed.2d 581, allows a defendant potentially to gain by flouting the authority of the court. This Court will not adopt a rule that permits a defendant to benefit from his own misconduct.

*Id.* Concluding that Troupe's action "necessarily has an adverse impact on the criminal justice system," the Court dismissed the appeals. *Id.*

Very recently this court applied the escape rule to dismiss an appeal in *State v. Surritte,* 35 S.W.3d 873, 874 (Mo.App. 2001). This court stated that because it found the "escape rule" dispositive, it would not address the issues raised on appeal. *Surritte,* 35 S.W.3d at 874. After being convicted, Surritte filed a timely motion for new trial, but failed to appear for his sentencing. *Id.* He was subsequently arrested and the court denied the motion for new trial because of the "escape rule." *Id.*

Surritte argued on appeal that the trial court erred in applying the escape rule because the escape did not adversely affect the criminal justice system, as he was gone only four days and there was no evidence that he posed a danger to society or harmed anyone during his absence. *Id.* The appellant relied on *State v. Janson,* 964 S.W.2d 552, 554 (Mo.App.1998). In that case, the defendant had been missing for fifteen days after conviction and before sentencing, which required the rescheduling of the sentencing hearing. Nevertheless, the court in *Janson* declined to apply the escape rule, noting that there was no indication the defendant posed a danger to society during the time he was missing. *Id.* In *Surritte,* the defendant was arrested four days after the original sentencing hearing date and there was a total delay of fourteen days before he was finally sentenced. *Id.* at 874–75. Despite the similarity in the length of time the defendants

need to discourage escape and encourage voluntary surrender. *Troupe,* 891 S.W.2d at 810.

were at large, the court declined to follow *Janson* and dismissed Surritte's appeal, stating that "the length of the period of escape is not the only factor for consideration." *Id.* Looking at the entire set of circumstances, the court concluded that Surritte had shown "no respect for the judicial system" or any "willingness to let the legal process run its course." *Id.*

In a Southern District case that is factually similar to the case at hand, *State v. Brown*, 974 S.W.2d 630, 631 (Mo.App. 1998), the state had moved to dismiss the defendant's appeal based upon the escape rule when Brown escaped from jail after a jury convicted him of the class C felony of forgery and sentence had been imposed. The court granted the state's motion and dismissed the appeal. *Brown*, 974 S.W.2d at 631. The *Brown* court stated that there are many rationales to justify application of the escape rule, including: (1) the need for a court to have control over the defendant before making a decision on appeal; (2) curtailment of administrative problems caused by the defendant's long absence; (3) preventing prejudice to the state in the event of remand for a new trial; (4) preventing defendants from selectively abiding by court decisions; (5) discouraging escape and encouraging voluntary surrender; (6) preserving respect for the criminal justice system; and (7) promoting the dignified operation of the appellate courts. *Id.* at 632.

The defendant in *Brown* opposed dismissal of his appeal under the escape rule by arguing that the facts were analogous to those in *State v. Janson, supra*, where the court had refused to apply the escape

rule. *Brown*, 974 S.W.2d at 631. The court disagreed, noting that in *Janson*, the defendant did not appear at his sentencing; whereas *Brown did not merely fail to appear after being released on bond—he escaped from jail.* The court opined that these actions, *inter alia*, showed *Brown's* contempt for the authority of the court, affected the criminal justice system, and therefore made application of the escape rule appropriate. *Id.*

In *State v. Sprester*, 26 S.W.3d 603 (Mo. App.2000), the defendant's appeal from his conviction by a jury of stealing a credit card was dismissed when the appellate court granted the state's motion to dismiss based on the "escape rule." *Sprester*, 26 S.W.3d 603–04. After being released on $7,500.00 bond, the defendant failed to appear for his sentencing. *Id.* at 604. The trial court issued a warrant for his arrest in March of 1999, and in September of that same year, Sprester was arrested and returned from Springfield, Missouri. *Id.* The court stated that "the chief justification for the [escape] rule is remedial in nature, *i.e.*, to remedy the adverse effects that an escape has on Missouri's criminal justice system." *Id.* at 605 (*quoting Brown*, 974 S.W.2d at 633). Pointing out that Sprester's failure to appear caused a five-and one-half month delay in the case, the court observed that similar delays in sentencing, standing alone, have been held to have adversely affected the criminal justice system and have provided a sufficient basis for applying the escape rule.[6] *Id.* The sentencing delay, however, was not the only adverse effect on the criminal justice system; the trial court had to issue

---

6. Citing *Troupe*, 891 S.W.2d at 811 (holding an eight month sentencing delay due to defendant's escape necessarily affected the criminal justice system and warranted dismissal of appeal); *State v. Jackson*, 928 S.W.2d 894, 896 (Mo.App.1996) (ten-week delay); *President v. State*, 925 S.W.2d 866, 868 (Mo.App.1996)

(four month delay); *State v. Bailey*, 848 S.W.2d 611, 612 (Mo.App.1993) (six-week delay); *Wright*, 763 S.W.2d at 168 (five and one-half month delay), the court stated that in *Sprester*, the length of escape exceeded or equaled that in *Jackson, President, Bailey*, and *Wright*. *Sprester*, 26 S.W.3d at 605.

a capias warrant, and law enforcement officers expended resources to effect Defendant's arrest. *Id.* Additionally, the court said, the defendant's actions showed a lack of respect for the criminal justice system, and "[t]hose who seek the protection of this legal system must be willing to abide by its rules and decisions." *Id.* (*quoting President,* 925 S.W.2d at 868). The appeal was dismissed. *Id.*

*State v. Thornton,* 930 S.W.2d 54 (Mo. App.1996) is another case where the appellant actually escaped from custody, like the appellant in the case at hand. In that case, approximately one week after his conviction, the defendant escaped from the county jail, injuring a guard in the process. *Thornton,* 930 S.W.2d at 55. He was at large for more than two months before he was apprehended in the state of Georgia and returned to Missouri. *Id.* His notice of appeal was timely filed on that same day, but the state moved to have the appeal dismissed based upon the escape rule. *Id.* at 55–56.

In escaping, Thornton showed contempt for the authority of the court. *Id.* While he was at large for a period of more than two months, his criminal propensities posed a threat to those around him. *Id.* Also, the defendant in *Thornton* did not voluntarily return to custody, but was recaptured. *Id.* at 57. The court concluded that the defendant's actions caused prejudice to and adversely affected the criminal justice system, and sustained the state's motion to dismiss the appeal. *Id.*

### Conclusion

Burk, convicted of armed robbery, showed, by his escape, a willingness to engage in conduct constituting a threat to the safety of society. His actions further showed a lack of respect for the system, and necessitated the expenditure of law enforcement resources. He did not volun-

tarily return to custody, but was recaptured. "Those who seek the protection of this legal system must ... be willing to abide by its rules and decisions." *Troupe,* 891 S.W.2d at 810. Burk has flouted the authority of the courts. *Id.* Accordingly, we grant the motion to dismiss the appeal.

Appeal dismissed.