STATE of Missouri, Plaintiff–Respondent,

v.

John Melvin KEARNS, Defendant–Appellant.

No. 15306.

Missouri Court of Appeals, Southern District, Division Two.

Dec. 11, 1987.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 29, 1987.

Application to Transfer Denied Feb. 17, 1988.

William L. Webster, Atty. Gen., Robert V. Franson, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Ronald A. Conway, Asst. Public Defender, Springfield, for defendant-appellant.

PER CURIAM.

Defendant has appealed his conviction of the crime of felony stealing, § 570.030, RSMo 1978. For reasons hereinafter set forth, we sustain the state's motion to dismiss the appeal.

Defendant's case was tried to a jury in April of 1981, at the conclusion of which a verdict of guilty was returned. Hearing on a defense motion for new trial was rescheduled three times, with the motion then being denied on July 27, 1981. Defendant was present. At a later date, a persistent offender hearing was held with defendant present. Defendant apparently remained at liberty on a conditional release covered by a bond.

On the scheduled sentencing date, September 18, 1981, defendant failed to appear and a capias warrant was issued for his arrest. An order for forfeiture of the bond was entered. Subsequent proceedings included an opportunity for the surety on defendant's bond to produce defendant and avoid a judgment. That opportunity did not result in production of the defendant, so a judgment on the forfeiture was entered in December of 1981.

At some later time, defendant apparently came into confinement at the Medical Center for Federal Prisoners in Springfield. He was brought before the trial court to begin sentencing proceedings in May of 1987. Sentence was pronounced and judgment entered on the 1981 conviction on July 17, 1987. Thereafter, a timely notice of appeal was filed.

The state has filed a motion to dismiss this appeal on the basis of the "escape rule," contending defendant has "forfeited" his ordinary right to appeal. The motion cited *State v. Gilmore*, 727 S.W.2d 469 (Mo.App.1987).

Initially, we determined that the motion should be taken with the case for determination after briefing and submission. Certain problems thereafter arose in the prepa-

ration of a transcript which have brought the issue again to the fore. The state has urged us to determine the question of whether this appeal should be heard on its merits. Because we agree that it should not, it is unnecessary for us to direct the preparation of a complete transcript.

"Missouri has long had the rule that a defendant who escapes or flees the jurisdiction of its courts either during trial or in the process of post-trial proceedings forfeits his rights to an appeal upon the merits of the cause." *State v. Peck*, 652 S.W. 2d 244, 245 (Mo.App.1983). *See State v. Carter*, 98 Mo. 431, 11 S.W. 979 (1889); *State v. Gilmore*, supra; *Wayne v. State*, 579 S.W.2d 780, 781 (Mo.App.1979); *White v. State*, 558 S.W.2d 372, 375 (Mo.App. 1977). In one form or another, this principle is recognized by most courts,[1] including the United States Supreme Court. *Molinaro v. New Jersey*, 396 U.S. 365, 90 S.Ct. 498, 24 L.Ed.2d 586 (1970); *Smith v. United States*, 94 U.S. (4 Otto) 97, 24 L.Ed. 32 (1876). *See also Estelle v. Dorrough*, 420 U.S. 534, 95 S.Ct. 1173, 43 L.Ed.2d 377 (1975); *United States v. Sharpe*, 470 U.S. 675, 721, 105 S.Ct. 1568, 1594, 84 L.Ed.2d 605, 638 (1985) (Stevens, J., dissenting).

A review of these and other authorities shows that the main reason for the development of the rule lies in the inherent need for a court to have control over those who come before it seeking relief. "The whole theory of criminal proceeding rests upon the idea of the defendant being personally under the control of the court." *State v. Logan*, 125 Mo. 22, 26, 28 S.W. 176, 177 (1894). A corollary of this is the concern that a criminal defendant who absents himself on appeal after conviction not be permitted to accept a favorable result but reject an unfavorable one by his continued absence, all "as he may consider most for his interest." *Smith v. United States*, su-

pra, 94 U.S. at 97, 24 L.Ed. at 32. In establishing the applicability of the escape rule in this state, our supreme court noted that courts cannot tolerate such "trifling with justice" by an appellant who has stationed himself "to speculate on the chances for a reversal." *State v. Carter*, supra, 98 Mo. at 432–433, 11 S.W. at 980. Consequently, we have had occasion to question whether the rule is invariably applicable if the fleeing defendant is restored to custody before his appeal is dismissed, because then the loss of control has been cured. *Sinclair v. State*, 708 S.W.2d 333 (Mo.App. 1986).[2]

However, there are other considerations presented by a case, like the present one, in which the appellant has thwarted the usual orderly process by his extended absence, and has succeeded in delaying his sentencing, and hence his appeal, by more than five years. Such not only shows contempt for the very process which defendant now seeks to utilize, but the long hiatus preceding the case reaching us presents administrative problems for this court, and almost certain prejudice to the state in the event of a remand for a new trial.

Such considerations, and others, have influenced courts which have adopted the application of the escape rule under circumstances in which the criminal appellant had been returned to custody. In *United States v. Puzzanghera*, 820 F.2d 25 (1st Cir.1987), the defendant, having lodged his appeal, failed to return to prison after a furlough. He was later arrested in a distant location. In considering a motion to dismiss the appeal, the court recognized that the return to custody was a factor cutting against invocation of the escape rule in light of the principal reason for the rule. However, the court also noted the considerable burden of expense and effort placed on the government by a fleeing de-

---

1. *E.g., United States v. Wood*, 550 F.2d 435 (9th Cir.1976); *People v. Estep*, 413 Ill. 437, 109 N.E.2d 762 (1952), *cert. denied*, 345 U.S. 970, 73 S.Ct. 1112, 97 L.Ed. 1387 (1953); *Mason v. State*, 440 N.E.2d 457 (Ind.1982); *Weser v. State*, 224 Kan. 272, 579 P.2d 1214 (1973); *Wheeler v. State*, 249 So.2d 652 (Miss.1971); *Hardy v. Morris*, 636 P.2d 473 (Utah 1981).

2. In *Sinclair*, we concluded that attempted escape does not work a forfeiture of the right to pursue a Rule 27.26 motion. In our reasoning, we observed that precedents implied that a return to custody while an appeal is pending would prevent the subsequent dismissal of the appeal. Even so, however, we thought that if an attempted escape "substantially hindered" the court in which relief was being sought, then a different result might be proper.

fendant, and that the appellate court is required to divert its attention from the merits of the appeal to concentrate on extraneous matters. Hence, having disentitled himself to appellate review by his conduct, "it can be argued that there is no good reason why recapture should restore the *status quo ante.*" *Id.* at 26. Furthermore, the court referred to the discouragement of escape, encouragement of surrender, and promotion of the dignified operation of the appellate court as applicable reasons for the escape rule. *Id.* at 27 note 2.

The Eleventh Circuit of the United States Court of Appeals has considered the escape rule in a context even more akin to the present case. In *United States v. Holmes,* 680 F.2d 1372 (11th Cir.1982), *cert. denied,* 460 U.S. 1015, 103 S.Ct. 1259, 75 L.Ed.2d 486 (1983), the defendant failed to appear for sentencing and his bond was subsequently forfeited. He was arrested about two years later. Upon sentencing, the defendant duly appealed. The court observed that most instances of application of the escape rule involve one who becomes a fugitive after filing a notice of appeal. It was held that reasoning supportive of the escape rule is equally applicable whether the defendant absconds before or after sentencing. That reasoning was found primarily in *Molinaro v. New Jersey,* supra, in which the Supreme Court spoke of disappearance as an act which "disentitles the defendant to call upon the resources of the Court for determination of his claims." 396 U.S. at 366, 90 S.Ct. at 499, 24 L.Ed.2d at 588.

The court in *Holmes* spoke of the incongruity of permitting defendants who flee prior to sentencing to thereafter "seek relief from the very legal system that they previously had seen fit only to defy." 680 F.2d at 1374. More to the point, perhaps, the court observed that gross postponement of the filing of an appeal for years after conviction would often make a meaningful appeal impossible, and that "the government would obviously be preju-

diced" in case of a reversal. *Id.* The appeal was dismissed.[3]

We likewise conclude that there is no good reason for maintaining the present cause on appeal, and that ample policy considerations support the dismissal of the appeal. This conclusion is consistent with *State v. Gilmore,* supra, in which, on very similar facts, Eastern District summarily dismissed the appeal of a defendant who fled prior to sentencing (or more precisely prior to his conviction *in absentia* ) and was not sentenced for over ten years. There was no discussion of reasons for the escape rule in *Gilmore,* nor were there comments on possible limitations on the rule. Thus, while we are not to be taken as holding that every disappearance, of whatever duration and under all circumstances, results in an irrevocable forfeiture of the right to appeal, we necessarily would find the result in *Gilmore* fully compatible with our conclusion in the present case.

The appeal is dismissed.

All concur.

---

**3.** In *United States v. London,* 723 F.2d 1538 (11th Cir.), *cert. denied,* 467 U.S. 1228, 104 S.Ct. 2684, 81 L.Ed.2d 878 (1984), the rule of *Holmes* was applied in a case in which disappearance had occurred prior to the conclusion of trial, with conviction *in absentia.* Sentencing, and appeal, occurred after capture some three years later.