STATE of Missouri, Respondent,

v.

Newton TROUPE, Appellant.

Newton TROUPE, Appellant,

v.

STATE of Missouri, Respondent.

No. 77108.

Supreme Court of Missouri,
En Banc.

Jan. 24, 1995.

Rehearing Denied Feb. 21, 1995.

Susan K. Eckles, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., F. Martin Dajani, Asst. Atty. Gen., Jefferson City, for respondent.

COVINGTON, Chief Justice.

Appellant Newton Troupe brings this consolidated appeal from a conviction for possession of heroin in violation of § 195.202, RSMo Supp.1990, and the denial of his Rule 29.15 motion without an evidentiary hearing. The court of appeals dismissed appellant's direct appeal pursuant to the escape rule, finding that appellant forfeited his right to appeal by failing to appear for sentencing and remaining at large for more than eight months. The court of appeals reversed the judgment dismissing the postconviction appeal. This

Court ordered transfer to decide whether *Ortega–Rodriguez v. United States,* —— U.S. ——, 113 S.Ct. 1199, 122 L.Ed.2d 581 (1993), requires the courts of Missouri to permit appellant to prosecute his appeal. Appeals dismissed.

Appellant was charged, as a class X offender and a persistent drug offender, with one count of illegal possession of heroin. On August 28, 1991, the second day of appellant's trial, the state and the defense made closing arguments, for which appellant was present. When the jury returned with a verdict of guilty, appellant was absent from the courthouse. The court sentenced appellant in absentia as a persistent drug offender and a class X offender.

Appellant was returned to custody on or about May 18, 1992. Appellant filed a pro se Rule 29.15 motion alleging ineffective assistance of trial counsel. The motion court sustained the state's motion to dismiss appellant's Rule 29.15 motion as untimely, but ordered appellant resentenced for the reason that he was not present for his initial sentencing. At resentencing, the trial court imposed the same fifteen year sentence it had imposed in absentia. Appellant contested this sentence by way of a timely pro se motion under Rule 29.15. The state moved to dismiss appellant's motion, arguing that under Missouri's escape rule appellant had forfeited his opportunity for postconviction relief. The motion court found that the trial court erred in sentencing appellant as a class X offender and ordered him resentenced without the class X designation. The motion court dismissed appellant's remaining claims without an evidentiary hearing.

The trial court resentenced appellant to fifteen years imprisonment without the class X offender status. Appellant appealed his conviction, sentence, and the denial of his Rule 29.15 motion without an evidentiary hearing. The state again moved to dismiss the appeals pursuant to the escape rule. The Missouri Court of Appeals, Eastern District, sustained the state's motion and dismissed appellant's direct appeal, but reversed the denial of appellant's Rule 29.15 motion without an evidentiary hearing and remanded. This Court granted transfer.

■ The escape rule operates to deny the right of appeal to a defendant who escapes justice. *State v. Wright,* 763 S.W.2d 167, 168 (Mo.App.1988). A defendant who flees justice also loses the opportunity to seek postconviction relief. *Stradford v. State,* 787 S.W.2d 832, 833 (Mo.App.1990).

■ Appellant claims that application of the escape rule in his case is contrary to law and deprives him of his constitutional rights. He argues, citing *Ortega–Rodriguez,* that the escape rule should not be automatically applied by appellate courts when the escape occurs prior to sentencing and has no impact on the appellate process.

In *Ortega–Rodriguez,* as in the instant case, the defendant fled prior to sentencing. *Ortega–Rodriguez,* —— U.S. at ——, 113 S.Ct. at 1202. The defendant was recaptured eleven months later. *Id.* He then filed a timely appeal from the court's judgment and sentence. *Id.* at ——, 113 S.Ct. at 1203. The United States Court of Appeals for the Eleventh Circuit sustained the government's motion to dismiss the appeal. *Id.* The United States Supreme Court held that, in general, a court of appeals may not dismiss an appeal pursuant to the federal fugitive from justice rule unless the escape coincides with the pendency of the appeal or it adversely affects the appellate process. *Ortega–Rodriguez,* —— U.S. at ——, 113 S.Ct. at 1209. The Supreme Court stated that recapture prior to the commencement of appellate proceedings usually severs the connection between the escape and the appellate process. *Id.* at ——, 113 S.Ct. at 1205–06. The Court stated that in circumstances in which the defendant escapes prior to invoking the appellate process, the sentencing court is generally the tribunal most directly affected by the escape and should be the court to consider appropriate sanctions. *Id.* at ——, 113 S.Ct. at 1209. The Court vacated the judgment of the court of appeals, and remanded the case for further proceedings consistent with the opinion. *Id.* at ——, 113 S.Ct. at 1210.

The pertinent facts of the present case are analogous to those of *Ortega–Rodriguez,* as well as several cases in which the Missouri

Court of Appeals followed *Ortega–Rodriguez* without analysis and reviewed the merits of an appeal despite an escape. *See State v. Akers*, 877 S.W.2d 147 (Mo.App.1994); *State v. Grisby*, 867 S.W.2d 270 (Mo.App.1993); *State v. Woods*, 861 S.W.2d 326 (Mo.App. 1993). The Supreme Court decided *Ortega– Rodriguez* in the exercise of its supervisory power over the federal courts and not on the basis of any constitutional principle. *Ortega– Rodriguez*, —— U.S. at ——, 113 S.Ct. at 1205. It falls to this Court, therefore, to determine whether to apply the reasoning of *Ortega–Rodriguez* to cases in Missouri in which a criminal defendant escapes during trial and is recaptured prior to initiating an appeal. After reviewing the various justifications for the escape rule alongside the reasoning of *Ortega–Rodriguez*, this Court determines not to depart from Missouri precedent.

Although application of the escape rule clearly requires a relationship between the escape and prejudice to the criminal justice system, this Court does not agree that the rule may be applied by an appellate court only when the appellate process itself is substantially prejudiced. For over a century Missouri courts have advanced rationales that justify application of the escape rule because of the adverse effect an escape has on Missouri's criminal justice system. The escape rule was first applied in Missouri in *State v. Carter*, 98 Mo. 431, 11 S.W. 979 (Mo.1889). In *Carter*, the defendant escaped while his appeal was pending. *Id.*, 11 S.W. at 979. The rationale expressed for the application of the escape rule was the need for a court to have control over the defendant before rendering its decision on appeal. *Id.* at 980. Otherwise, the defendant "places himself in a position to speculate on the chances of reversal, meanwhile keeping out of the reach of justice, and prepared to render the judgment of reversal nugatory or not, at his option." *Id.*

■ Subsequently, courts advanced additional justifications for the escape rule. In *State v. Kearns*, 743 S.W.2d 553 (Mo.App.

1987), the defendant, who remained free on bond following his conviction, failed to appear for sentencing and remained at large for more than five years. The defendant was captured and sentenced, and then sought to appeal the judgment and sentence. *Id.* at 553. The court applied the escape rule because of the administrative problems caused by the defendant's long absence. *Id.* at 554. In addition, the extended delay created "almost certain prejudice to the state in the event of a remand for a new trial." *Id.* The court in *State v. Wright*, 763 S.W.2d at 168– 69, articulated another rationale:

> Those who seek the protection of this legal system must, however, be willing to abide by its rules and decisions. [The defendant] comes before this court seeking vindication of her Fourth Amendment rights. Earlier, however, when she absconded she showed her reluctance to accept the decision of the trial court or to await the vindication of her rights by this court. She may not selectively abide by the decisions of the courts. By absconding, she has forfeited her right to appeal. (Citations omitted).

Furthermore, application of the escape rule discourages escape and encourages voluntary surrender. *Kearns*, 743 S.W.2d at 555.

Recently, in *Robinson v. State*, 854 S.W.2d 393, 396 (Mo. banc 1993), this Court recognized that the escape rule should not be applied to dismiss challenges to post-capture errors. "It is one thing to say that a defendant constructively waives errors in law that have occurred at the time of the escape; it is quite another to say that, having escaped and returned, the defendant is no longer entitled to be treated as provided by law because the escape forfeits all rights of appeal for the future." *Id.*

In the present case, appellant was at large for more than eight months.[1] His escape, therefore, hindered the administration of justice in his case by at least this amount of time. It strains credulity to postulate that such a delay does not have an adverse impact on the criminal justice system and the state's

---

1. The state incorrectly maintains throughout its brief that appellant was at large for "a year and a half."

case. If appellant were successful on the merits of an appeal, the cause might be remanded for a new trial. In that event, the state could be prejudiced by lost or destroyed evidence and witnesses who are no longer available. Further, over time, witnesses' memories fade, subjecting them to impeachment and consequent diminished credibility.[2]

In escaping from custody, whether before or after filing a notice of appeal, a defendant flouts the authority of the courts. *Ortega–Rodriguez*, which permits dismissal pursuant to the fugitive from justice rule only if the escape had "a significant interference with the operation of [the] appellate process," *Ortega–Rodriguez*, —— U.S. ——, 113 S.Ct. at 1209, allows a defendant potentially to gain by flouting the authority of the court. This Court will not adopt a rule that permits a defendant to benefit from his own misconduct.

■ A reviewing court may invoke procedural rules to protect the orderly and efficient use of its resources. In applying the escape rule, the relevant inquiry is whether the escape adversely affects the criminal justice system. If so, dismissing the escapee's appeal is appropriate. This determination is left to the sound discretion of the appellate tribunal.[3]

This Court determines that a delay of more than eight months necessarily has an adverse impact on the criminal justice system. Appellant's appeals are, therefore, dismissed. To the extent that *State v. Akers*, 877 S.W.2d 147 (Mo.App.1994), *State v. Grisby*, 867 S.W.2d 270 (Mo.App.1993), and *State v. Woods*, 861 S.W.2d 326 (Mo.App.1993), are inconsistent with this opinion, they should not be followed.

■ Appellant asserts that application of the escape rule to dismiss his appeals would violate his right to due process. Although appellant does not explain how application of the escape rule would violate his due process rights,[4] he cites *Branch v. Turner*, 37 F.3d 371 (8th Cir.1994). In *Branch*, a divided panel of the United States Court of Appeals for the Eighth Circuit ruled that the Missouri Court of Appeals, Western District, denied Branch her substantive due process rights by dismissing her appeals pursuant to the escape rule. *Id.* at 376. This Court will afford ex gratia review of appellant's allegation.

*Branch* is readily distinguishable from the present case on its facts. Branch was convicted of first degree murder. *State v. Branch*, 811 S.W.2d 11 (Mo.App.1991). The trial court ordered a hearing to consider Branch's motion for new trial, and, if necessary, to sentence her. *Branch*, 37 F.3d at 373. Branch, who remained free on bond, failed to appear at the hearing. *Id.* Three days later, Branch was arrested and returned to custody. *Id.* The trial court sentenced Branch four days after her recapture. *Id.* On the same day she was sentenced, Branch appealed. *Id.* Branch's appeal, therefore, was timely filed, and would have been timely filed if Branch had appeared for the originally scheduled hearing. *Id.* The court of appeals dismissed Branch's appeals pursuant to the escape rule. *Branch*, 811 S.W.2d at 12.

■ Here, appellant was at large for more than eight months and delayed the proceed-

---

2. The state, in an attempt to show that it is the only party that stands to be prejudiced by the escape, argues that appellant would not be prejudiced by the passage of time in the event of remand "because appellant did not present any witnesses or evidence at trial." The record reveals, however, that appellant called two witnesses and read the testimony of a third into the record.

3. Missouri appellate courts have exercised discretion in deciding whether to entertain appeals to which the escape rule may apply. *See State v. Simpson*, 836 S.W.2d 75 (Mo.App.1992) (escape rule not applied to dismiss appeal of juvenile

who was certified to stand trial as an adult for murdering her mother when defendant absented herself from court-appointed foster home and failed to keep court-ordered appointment); *Sanders v. State*, 790 S.W.2d 497 (Mo.App.1990) (applicability of escape rule recognized, but merits of appeal reviewed ex gratia); *Sinclair v. State*, 708 S.W.2d 333 (Mo.App.1986) (escape rule not applied where defendant was immediately recaptured).

4. Nor does the state favor the Court with a discussion of the issue.

ings in his case for at least that long. In *Branch*, the court of appeals did not find that the escape had an adverse impact on the criminal justice system, *State v. Branch*, 811 S.W.2d 11 (Mo.App.1991), nor did the state so assert in responding to Branch's petition for habeas corpus. *Branch*, 37 F.3d at 376. This Court, however, has made such a determination in the present case. Further, this Court does not agree that consistent application of a state procedural rule designed to protect the orderly and efficient use of the resources of the criminal justice system violates a defendant's substantive due process rights.[5] The federal court recognized that if "a defendant's pre-appeal flight disturbs the orderly operation of a state appellate court, we believe the sanction of dismissal is justified." *Branch*, 37 F.3d at 375 (*citing Ortega–Rodriguez*, — U.S. at —, 113 S.Ct. at 1208). Thus, under the facts of this case, the Eighth Circuit's analysis in *Branch* does not aid appellant. Appellant's constitutional claim has no merit.

Accordingly, appellant's direct appeal and his appeal from denial of postconviction relief without an evidentiary hearing are dismissed.

HOLSTEIN, THOMAS and PRICE, JJ., concur.

LIMBAUGH, J., concurs in result in separate opinion filed.

BENTON and ROBERTSON, JJ., concur in opinion of LIMBAUGH, J.

LIMBAUGH, Judge, concurring.

The traditional escape rule provides that a defendant who escapes from custody during the proceedings against him waives his right to appeal the merits of the conviction and sentence. It is the escape itself, not the duration of the escape, that effectuates the rule. *State v. Smith*, 815 S.W.2d 74, 76 (Mo.App.1991). Without any stated reason

for doing so, the majority today brings about a fundamental change to the escape rule, so that the rule is triggered not by the fact of the escape, but instead by a determination that "the escape adversely affects the criminal justice system." I write separately because I cannot fathom how the new rule improves upon the old.

The majority's position is apparently a reaction, an unnecessary reaction, to the recent 5–4 decision of the United States Supreme Court in *Ortega–Rodriguez v. United States*, — U.S. —, 113 S.Ct. 1199, 122 L.Ed.2d 581 (1993), which, as the majority acknowledges, is limited to an interpretation of federal statutory law and is not binding on this Court. The *Ortega* holding permits dismissal of appeals only if the escape had "a significant interference with the operation of [the] appellate process." Although the majority disavowed this holding, it then, without analysis, discarded the traditional escape rule and replaced it with a watered-down version.

In formulating an escape rule that turns on whether the "escape adversely affects the criminal justice system," the majority fails to recognize that every escape has an adverse effect on the criminal justice system. Regardless of the duration of the escape, whether it lasts for six months, as in this case, or for six days, or even for six hours, an adverse effect invariably results. I suppose that the purpose of the modification of the rule is to allow defendants to appeal when an escape produces an adverse effect that is only nominal. For example, the escape rule may not apply when the defendant is recaptured or otherwise returns to custody within a short time after the escape. In my view, however, a determination of adverse effect is a difficult task, especially when no guidelines are given for that determination. Furthermore, I question whether courts can be consistent in their determinations of adverse effect from case to case.

**5.** The right to appeal a criminal conviction is purely statutory, with no basis in the constitution. *State v. La Driere*, 299 S.W.2d 512, 515 (Mo. banc 1957). Because there is no fundamental right at stake, Missouri's application of the escape rule in this case must have some rational relationship to a legitimate state interest to comply with the Due Process Clause. *See United States v. Carolene Products Co.*, 304 U.S.

144, 152, 58 S.Ct. 778, 783, 82 L.Ed. 1234 (1938). Application of the escape rule to dismiss appellant's appeals, under the circumstances of this case, "is reasonable in light of the interests it is designed to protect." *Ortega–Rodriguez*, — U.S. at —, 113 S.Ct. at 1210 (Rehnquist, C.J. dissenting); *see Branch*, 37 F.3d at 376–79 (Bowman, J. dissenting).

A more compelling reason to retain the traditional escape rule, and a reason that the new rule does not take into account, is that the act of escape shows that the defendant no longer wishes to avail himself or herself of the rights afforded under the criminal justice system. Indeed, it can hardly be said that a defendant who escapes from custody has any expectation that he or she will be allowed to pursue an appeal in the event of recapture or return to custody. The escape, therefore, operates as a waiver of any right to appeal.

In sum, the bright line of the traditional escape rule is the proper response to the defendant's waiver. Moreover, the bright line rule, grounded also in recognition of the fact that every escape produces an adverse impact on the system, is far superior to a rule that requires the courts to evaluate the degree or extent of that adverse impact. I would apply the escape rule to preclude all appeals pertaining to errors that occurred prior to the escape. Because the majority disallowed the appeal in this case, albeit by faulty rationale, I concur in the result.