STATE of Missouri, Respondent,

v.

Patrick J. WILLIAMS, Appellant.

No. WD 60754.

Missouri Court of Appeals, Western District.

April 29, 2003.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 1, 2003.

Application for Transfer Denied Aug. 26, 2003.

Jeremiah W. (Jay) Nixon, Atty. Gen., Shaun J. Mackelprang, Assistant Attorney General, Jefferson City, MO, for Respondent.

Laura G. Martin, Assistant Public Defender, Kansas City, MO, for Appellant.

Before ELLIS, C.J., and HOWARD and HARDWICK, JJ.

VICTOR C. HOWARD, Judge.

A Jackson County, Missouri, jury convicted Patrick Williams of one count of possession of a controlled substance. § 195.202 RSMo 2000. On direct appeal from that conviction, Williams alleges that the trial court erred: (1) in overruling his motion for judgment of acquittal at the close of the evidence and in thereafter submitting the case to the jury because the evidence was insufficient to show that he actually or constructively possessed the crack cocaine, and (2) in overruling his motion to suppress the crack cocaine evidence.

The State filed a motion to dismiss the appeal, because after his conviction Williams did not appear for sentencing until more than nine months after it was originally scheduled by the trial court. As explained below, we grant the State's motion to dismiss.

### Background

After a two-day trial, the jury returned its guilty verdict on January 10, 2001.[1] After the jury was dismissed, the trial court granted Williams a ten-day extension to file a post-trial motion. The court further agreed to maintain Williams's recognizance bond (ROR bond), ordered his cooperation in a presentence investigation (PSI), and set the sentencing date for February 22, 2001. Williams verified his personal contact information with the court, and court adjourned.

The PSI, completed on January 30, 2001, indicated that Williams did not cooperate in its preparation. Then, he did not appear for sentencing on February 22, 2001. Thus, the trial court issued a warrant for his arrest.

Williams was arrested on November 10, 2001, on a separate charge for being a felon in possession of a firearm. The trial court then scheduled a sentencing hearing for his possession conviction on November

---

1. Although the trial court's Judgment and Trial Minutes indicate that trial began on January 10, 2001, and the guilty verdict was entered on January 11, 2001, the transcript of the proceedings indicate that trial began on January 9th, and the verdict was entered on January 10, 2001.

28, 2001. At that hearing, the arresting officer recommended that Williams be sentenced to a prison term. Williams then testified that he was justifiably uncooperative in the PSI, that he had not appeared for sentencing because he felt that it was more important that he went and got a job, and that he deserved "some kind of probation" instead of a prison term. After finding that there was no legal cause why a sentence should not be pronounced and that counsel had adequately represented Williams, the court sentenced Williams to a term of three years in the penitentiary. Prior to announcing this sentence, the court explained to Williams that he did not deserve probation. Specifically, the court told him:

> [A]fter that guilty verdict was entered and accepted ... [y]ou had a very good chance to continue to be a free man, and this court told you to ... cooperate with [your PSI][, and] to come back to this court on that date in February for sentencing.... Mr. Williams, you had an error in judgment when you did not cooperate in the PSI.... [Y]our next error in judgment was not to show up in this court when this court told you to be here for sentencing.... If you had done what I told you in January and come back here and been here when you were supposed to; that might've been a different story.... However, you did not make the most of that opportunity. You wanted to do it your way [rather than cooperate with the PSI].... You were [ ] under direct order from this court to be back on a certain day, and you didn't do it. So I don't have a lot of confidence that you will obey any orders of this court ... [concerning] probation.

This direct appeal follows.

**2.** The actual delay between Williams's conviction and sentencing was actually just over nine months.

## Escape Rule

The State has moved to dismiss Williams's appeal on the grounds that after his conviction, while out on a ROR bond, Williams did not appear for sentencing until more than nine months after the originally scheduled sentencing, after he was arrested on a separate charge for being a felon in possession of a firearm. Citing the cases of *State v. Troupe*, 891 S.W.2d 808, 811 (Mo. banc 1995), *State v. Burk*, 49 S.W.3d 207, 211–12 (Mo.App. W.D.2001), and *State v. Sprester*, 26 S.W.3d 603, 605 (Mo.App. S.D.2000), the State asserts that Williams's "flight from justice ... adversely affected the criminal justice system by causing approximately eleven [2] months of delay." The State further argues this his escape

> caused the expenditure of additional resources to facilitate his arrest[,] ... showed 'a willingness to engage in conduct constituting a threat to the safety of society,' ... showed a lack of respect for the criminal justice system ... [, and] showed contempt for the authority of the court.

(Quoting *Burk*, 49 S.W.3d at 212.) Thus, the State maintains that Williams "should not be allowed to continue to tax the criminal justice system, which he spurned, by pursuing this appeal."

◼ In rebuttal, Williams argues that the doctrine of laches should somehow operate to bar the State's assertion of the escape rule. He maintains that the State should be precluded from asserting the escape rule, or, in other words, that it waived its right to asserting the rule, because it did not file its motion raising the issue until more than nine months after

the trial court announced its sentence. He acknowledges that the Missouri Supreme Court, in *Troupe*, "details the current state of the law in Missouri on the escape rule," and that it therein "declined to follow the United States Supreme Court opinion of *Ortega–Rodriguez v. [United States]*, 507 U.S. 234, 113 S.Ct. 1199, 122 L.Ed.2d 581 (1993), because the U.S. Supreme Court was exercising its supervisory powers over the federal courts and cited no basis for its decision on any constitutional principals." Nonetheless, he maintains that the justification for the rule as applied in other cases is not applicable to his case and "respectfully asks" that we "re-examine the holding" of *Troupe* and "the status of Missouri case law on the escape rule in light of the U.S. Supreme Court's holding and rationale in *Ortega–Rodriguez*. . . ."

■ This court is bound by the holding in *Troupe*, Mo. CONST. art. 5, § 2, and we will not accept the invitation to re-examine it. Nor do we find that the State is precluded from raising the rule. Williams has failed to show that he suffered any prejudice by the State's timing in filing its motion to dismiss.

■ "The escape rule operates to deny the right of appeal to a defendant who escapes justice." *Troupe*, 891 S.W.2d at 809. As explained by the supreme court:

> A reviewing court may invoke procedural rules to protect the orderly and efficient use of its resources. In applying the escape rule, the relevant inquiry is whether the escape adversely affects the criminal justice system. If so, dismissing the escapee's appeal is appropriate. This determination is left to the sound discretion of the appellate tribunal.

*Id.* at 811. Both the supreme court in *Troupe*, 891 S.W.2d at 809–12, and this court in *Burk*, 49 S.W.3d at 209–12, sufficiently explain the justifications for the escape rule. We do not feel it is necessary to delve any further into the issue.

Williams attempts to justify his time away from the court and argues there was no "real" adverse impact on the criminal justice system. We are not persuaded. He was at large for more than nine months. In *Troupe*, the supreme court found that appellant's eight-month period of being at large "hindered the administration of justice in his case by at least this amount of time. It strains credulity to postulate that such a delay does not have an adverse impact on the criminal justice system and the state's case." *Troupe*, 891 S.W.2d at 810–11. The same is true in this case. Williams's decision to abscond from the sentencing proceedings pending against him for more than nine months after his conviction demonstrated his lack of respect for, and "necessarily [had] an adverse impact on," the criminal justice system. *Id.* at 811. His unwillingness to abide by the rules of the trial court below results in a forfeiture of his rights on appeal. *Id.* at 810 (citing *State v. Wright*, 763 S.W.2d 167, 168–69 (Mo.App. W.D. 1988)).

## Conclusion

Williams's voluntary decision not to appear at sentencing until more than nine months after the originally scheduled date adversely affected the criminal justice system. Accordingly, we dismiss his appeal. *Id.* at 811–12.

ELLIS, C.J., and HARDWICK, J., concur.