Alan ECHOLS, Appellant,

v.

STATE of Missouri, Respondent.

No. WD 63758.

Missouri Court of Appeals,
Western District.

Feb. 22, 2005.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 29, 2005.

Application for Transfer Denied
Aug. 30, 2005.

---

1. All rule references are to Mo. R.Crim. P.2004, unless otherwise indicated.

Kent E. Gipson, Public Interest Litigation Cl, Kansas City, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Adriane Dixon Crouse, Asst. Attorney General, Jefferson City, MO, for Respondent.

Before HAROLD L. LOWENSTEIN, P.J., PAUL M. SPINDEN, and JAMES M. SMART, JR., JJ.

JAMES M. SMART, JR., Judge.

Alan L. Echols appeals the trial court's judgment dismissing his Rule 29.15 motion for post-conviction relief based on the "escape rule." He also attacks the court's failure to remove his post-conviction counsel, claiming that counsel "abandoned" him and had an "actual conflict of interest." The judgment is affirmed.

**Factual and Procedural Background**

Appellant Alan Echols was found guilty of murder in the first degree and armed criminal action after a jury trial. Following the verdict, Echols was permitted, over the State's objection, to remain free on a $100,000 cash bond with the condition that he appear before the court to post an additional $60,000. The next morning, the State filed a motion for reconsideration of the continuation of bail, and a hearing was held later that day. Echols did not personally appear at that hearing. The court entered an order setting aside the bond and ordering Echols to surrender or be taken into custody. When Echols did not appear in court as ordered, the court revoked Echols' bond and issued a warrant for his arrest. About six weeks later, a hearing was held at which a motion for forfeiture of the bond was granted. *See State v. Echols,* 850 S.W.2d 344, 348 (Mo. banc 1993).

Eight years later, in August 1999, Echols was involuntarily apprehended in Louisiana. In October of that year, he appeared before the court and was sentenced to concurrent terms of life imprisonment without the possibility of parole and eighty years.

Prior to his act of absconding, Echols was represented by retained counsel. Following Echols' recapture, he retained a different attorney to represent him at sentencing and on direct appeal. That attorney brought one point on appeal, i.e., that the court erred in deleting a portion of Echols' videotaped confession before playing it to the jury because it prevented the jury from assessing his mental state, thereby denying him his rights to due process and to present a defense. This court affirmed the judgment in a per curiam order with unpublished memorandum after reviewing the appeal on its merits. *State v. Echols,* 32 S.W.3d 623 (Mo.App. 2000).

Echols timely filed his *pro se* Rule 29.15 motion for post-conviction relief, and the court appointed counsel to represent him in the post-conviction proceedings. Later,

Echols retained the services of the same attorney who represented him on direct appeal (along with another attorney) to represent him on post-conviction relief. Appointed counsel was granted leave to withdraw, and retained counsel timely filed the amended Rule 29.15 motion. A date was set for an evidentiary hearing. On the day that hearing was scheduled, the State filed a motion to dismiss based on the "escape rule" (which says that one who escapes and is recaptured can be deemed to have forfeited the aid of the court as to the proceedings that occurred prior to the escape). Echols' retained counsel filed written suggestions in opposition to the dismissal motion. The court eventually granted the State's motion and dismissed Echols' Rule 29.15 motion without an evidentiary hearing.

Echols' retained counsel represented him in the post-conviction proceedings until the dismissal, after which Echols filed a *pro se* motion to reconsider. That motion was denied. Echols then filed a *pro se* notice of appeal of the dismissal order. Again, counsel has been appointed to represent him, and he now brings this appeal.

### Standard of Review

Appellate review of the denial of a Rule 29.15 motion is limited to a determination of whether the motion court's findings of fact and conclusions of law are clearly erroneous. Rule 29.15(k). Findings and conclusions are clearly erroneous only if, after a review of the entire record, the court is left with a definite and firm impression that a mistake has been made. *Moss v. State*, 10 S.W.3d 508, 511 (Mo. banc 2000).

### Point I: Escape Rule

Echols argues that the motion court clearly erred in dismissing his Rule 29.15 motion for post-conviction relief pursuant to the "escape rule," thereby denying him his due process right to meaningful access to the courts.

The "escape rule" generally denies the right of appeal to a defendant who attempts to escape justice by absconding. *State v. Troupe*, 891 S.W.2d 808, 809 (Mo. banc 1995). The rule also can be applied to deny post-conviction relief. *Id.; Fogle v. State*, 99 S.W.3d 63, 65 (Mo.App.2003). The rule applies only to errors that occur up to the time of the escape. *Robinson v. State*, 854 S.W.2d 393, 396 (Mo. banc 1993). Whether to apply the escape rule is discretionary. *Troupe*, 891 S.W.2d at 811. And its application does not violate a defendant's constitutional rights because neither a right to appeal a conviction nor a right to a state post-conviction proceeding exists. *Randol v. State*, 144 S.W.3d 874, 876 (Mo. App.2004) (*citing Goeke v. Branch*, 514 U.S. 115, 120, 115 S.Ct. 1275, 131 L.Ed.2d 152 (1995) and *Reuscher v. State*, 887 S.W.2d 588, 590 (Mo. banc 1994)).

A defendant who flees justice may also lose the "opportunity to seek post-conviction relief." *Troupe*, 891 S.W.2d at 809. In post-conviction cases, the escape rule has been invoked both to dismiss appeals where the motion court reached the merits of the movant's claim and to affirm the motion court's dismissal of a motion based on its own application of the rule. *Vangunda v. State*, 922 S.W.2d 857, 858 (Mo.App.1996). This case, like *Vangunda*, deals with the latter situation.

### Arguments

Echols claims that the motion court clearly erred in granting the State's motion to dismiss his Rule 29.15 motion under the "escape rule" for the following reasons: (1) the State was "collaterally estopped" from asserting the escape rule to dismiss his post-conviction motion because this

court did not invoke the rule to dismiss his direct appeal; (2) the State did not raise the "escape rule defense" within thirty days after the amended motion was filed; (3) the State did not demonstrate any adverse effects to the legal system caused by his escape; and (4) in light of the seriousness of the charges against him and the merits of his claims for relief, justice would best be served by allowing the claims to be heard on their merits.

### Collateral Estoppel

■ First, we address Echols' contention that the escape rule could not be invoked in the post-conviction proceeding because the escape rule was not invoked by this court in the direct appeal. Echols argues that the State's "failure to convince this court to dismiss the direct appeal under the escape rule preclude[s] the state from re-litigating this issue during post-conviction proceedings." We disagree. The State requested this court to dismiss Echols' direct appeal based on the escape rule, but this court declined to do so without commenting on the matter. The court reviewed Echols' argument on its merits instead. That, however, does not mean that the State's argument seeking to invoke the escape rule was meritless. This court did not adjudicate the applicability of the escape rule. Rather, we simply exercised our discretion not to invoke the escape rule. Thus, the State was not "collaterally estopped" from reasserting the issue.

*Collins v. State,* 141 S.W.3d 96 (Mo.App. 2004), demonstrates that the failure of an appellate court to dismiss a direct appeal on the basis of the escape rule does not automatically preclude the State from seeking the dismissal of a post-conviction motion under the rule. In *Collins,* we considered the motion court's dismissal of the post-conviction motion after the appel-

late court had declined to apply the escape rule. The dismissal was ultimately reversed, *not* because the State was collaterally estopped from raising the issue, but because the movant's claims dealt with post-capture errors that were not subject to the escape rule. *Id.* at 98. There was no indication that we regarded the State as precluded from raising the escape rule again.

### Untimely Filing

■ Echols also argues that the State's motion to dismiss in the post-conviction case should have been denied as untimely. Rule 29.15(g) states that "[a]ny response to the motion by the prosecutor shall be filed within thirty days after the date an amended motion is required to be filed." The State's motion to dismiss was not filed within thirty days. There is authority, however, that where the State has moved to dismiss on the same day as the hearing, such as here, the dismissal may be granted. *See, e.g., Vangunda,* 922 S.W.2d at 858. Even if the State had not raised the escape issue, the motion court, on its own, could have invoked the escape rule to dismiss Echols' motion. *See Rulo v. State,* 804 S.W.2d 866, 867 (Mo.App.1991) (holding that the motion court had the discretion to dismiss a post-conviction motion pursuant to the escape rule, *sua sponte* ). Any prejudice due to the late filing was alleviated by the court granting the movant ten days in which to file suggestions in opposition. Because the appellant fails to demonstrate that he suffered any prejudice by the State's timing in filing its motion to dismiss, and because the court could have acted *sua sponte,* we reject his argument that the motion court erred in granting the "untimely" motion. *See State v. Williams,* 112 S.W.3d 46, 48–49 (Mo. App.2003) (rejecting the argument that "doctrine of laches" precluded State from asserting the escape rule based on mov-

ant's failure to show prejudice from late filing of motion to dismiss).

### Adverse Effects

■ We also disagree with Echols' contention that the State did not demonstrate that the escape caused any adverse effects to the legal system. The State, in its motion to dismiss, did argue and attempt to prove that the escape adversely affected the judicial system.

■ Application of the escape rule requires a relationship between the escape and prejudice to the criminal justice system. *Troupe,* 891 S.W.2d at 810. Various rationales support the application of the escape rule, including the need to: (1) retain control over the defendant; (2) prevent adverse effects to the criminal justice system that an escape can cause; (3) lessen administrative difficulties caused by the defendant's absence; (4) prevent the prejudice that may result if the case is remanded for a new trial after an extended delay; (5) discourage escape; (6) encourage voluntary surrender; and (7) preserve respect for the criminal justice system. *See id.; State v. Burk,* 49 S.W.3d 207, 211 (Mo.App.2001). After listing the various rationales for application of the escape rule in its motion to dismiss, the State argued:

> All of these rationales are present in the case before this Court. The defendant by fleeing from the jurisdiction of the Court for over eight years clearly denied the Court its right to control the defendant. The defendant's long absence clearly caused administrative problems. The State in this case would certainly be prejudiced in that it is now over ten years removed from the time of the trial. Evidence may have been destroyed, witnesses may now be unavailable, and those witnesses who could appear may have clouded memories because of the long delay. These are only a few of the

ways in which the State would be prejudiced at a new trial. In addition, this Court has a need to discourage escapes and encourage voluntary surrenders to prevent cases like this from arising more frequently. .... This defendant is in a[ ] situation of trying to choose when and which laws he wishes to avail himself of and should not benefit by his wrongdoings.

■ A motion court is not required to make a specific finding that the judicial system was adversely affected by the escape in order to dismiss under the escape rule. *See Vangunda,* 922 S.W.2d at 859; *Clayton v. State,* 910 S.W.2d 369, 370 (Mo. App.1995) (both cases held that it was not error for the motion court to invoke the escape rule to dismiss a motion for post-conviction relief without an express finding of whether the escape adversely affected the criminal justice system).

The State's motion to dismiss, as well as the record in this case, supports the court's dismissal order. Many of the rationales underlying the escape rule are applicable here. The court had to issue a warrant for Echols' arrest. Law enforcement authorities were required to expend resources to search for him, to find him in the State of Louisiana, and to return him to Missouri. The forfeiture of the $100,000 cash bond posted by Echols' family members certainly did nothing to promote the willingness of citizens to post a cash bond for an accused. *See State v. Echols,* 850 S.W.2d 344 (Mo. banc 1993). Echols' escape caused an eight-year delay in sentencing, which also adversely affected the criminal justice system. *See Troupe,* 891 S.W.2d at 810.

Another oft-cited rationale for the escape rule is that "[t]hose who seek the protection of our legal system must be willing to comply with its rules and decisions." *State v. Massey,* 98 S.W.3d 105,

107 (Mo.App.2003). Here, Echols has shown a refusal to accept the decision of the trial court by absconding, but now seeks the protection of the court in a post-conviction proceeding.

### Merits of the Claims

Echols contends that the "equities involved ... strongly dictate in favor of hearing [the] post-conviction motion." Echols argues that in light of the seriousness of the charges against him and the merits of his claims for relief, justice would be best served by allowing his claims to be heard on their merits.

Echols first contends that in most cases where the escape rule has been applied, the charges were not as serious and the punishments not as severe as in his case. We do not find this necessarily to be true. *See, e.g., Burk,* 49 S.W.3d at 208 (first-degree robbery and armed criminal action, sentenced to life imprisonment and fifteen years); *State v. Buff,* 34 S.W.3d 856 (Mo. App.2000) (first-degree assault and armed criminal action, sentenced to two consecutive thirty-year prison terms); and *State v. Kelley,* 792 S.W.2d 697 (Mo.App.1990) (first-degree murder, sentenced to life imprisonment without eligibility for parole).

Echols argues the merits of his claims warranted an evidentiary hearing, citing this court's holding in *State v. White,* 81 S.W.3d 561 (Mo.App.2002). In that case, we declined the State's invitation to dismiss the direct appeal under the escape rule and remanded for a new trial based on our concerns about possible prosecutorial misconduct and the harm that failing to address such misconduct might cause the criminal justice system. *Id.* at 565–66.

That decision was simply an exercise of discretion, just like the decision of the motion court here. Echols' claims of ineffective trial counsel (e.g., failure to file a motion to suppress his confession) might, in the absence of his escape, warrant a hearing, but we have no reason to believe that he could show either ineffectiveness or prejudice.[1] Moreover, the issue before us is not whether *we* should invoke the escape rule, but rather whether we can say it was an abuse of discretion for the *motion court* to invoke the escape rule. We do not perceive, in this case, that the motion court would or should have seen the same potential for a miscarriage of justice or manifest injustice that we found in *White.* Point denied.

### Point II: Abandonment and Conflict of Interest

■ In his second point on appeal, Echols argues that the trial court clearly erred in denying his Rule 29.15 motion and in failing to *sua sponte* remove his post-conviction counsel. According to Echols, post-conviction counsel "abandoned" him by failing to file the motion for reconsideration or notice of appeal. Echols also alleges that counsel necessarily had an "actual conflict of interest," in that he also represented Echols on direct appeal and therefore would have been reluctant to assert his own ineffectiveness as appellate counsel.

■ The escape rule applies only to errors that occurred up to the time of escape. *Robinson v. State,* 854 S.W.2d 393, 396 (Mo. banc 1993). A defendant who has escaped and been returned to custody is entitled to appeal any post-

---

**1.** Although the interrogation was lengthy, the record indicates that Echols, after being informed of his rights, steadfastly maintained his innocence until the interrogator mentioned DNA testing. Echols then confessed, gave a lengthy videotaped confession, and took officers to the location where he buried the murder weapon and discarded other evidence.

capture errors. *Id.* Echols' complaints here with regard to his representation by post-conviction counsel are allegations as to events occurring after he was re-captured and returned to custody. Thus, these arguments are not precluded from consideration by the escape rule.

Echols retained a different attorney to represent him on direct appeal. That attorney raised one point of error concerning the deletion of a portion of Echols' videotaped confession before it was played to the jury. This court denied the appeal and affirmed Echols' convictions and sentences. *See Echols*, 32 S.W.3d at 623. Later, Echols again retained the services of his appellate attorney (along with another attorney) to represent him in his post-conviction proceedings. The retained attorneys filed an amended Rule 29.15 motion with eleven claims of error but included no allegations of ineffective assistance of appellate counsel.

 Echols now contends that his post-conviction counsel had an "actual conflict of interest" in that he also represented Echols on direct appeal. That conflict, Echols says, was the reason post-conviction counsel failed to advance any claims of ineffective assistance of appellate counsel. Echols cites no specific ineffective assistance claims that should have been brought, and none were included in his *pro se* Rule 29.15 motion. Nevertheless, according to Echols, there were "several colorable claims of ineffective assistance of appellate counsel ... that should have been advanced." Citing *State v. Griddine*, 75 S.W.3d 741 (Mo.App.2002), and *State v. Taylor*, 1 S.W.3d 610 (Mo.App.1999), Echols claims that his "successive representation" by the same attorney "created an inherent conflict of interest that adversely affected his performance." In both *Taylor* and *Griddine*, this court found an "actual conflict of interest" that

amounted to ineffective assistance of counsel. The circumstances in those cases differ from this case. In those cases, the effect of the conflict of interest was transparent, in that appointed counsel not only refused to file a motion for post-conviction relief, but also attempted to dissuade the client from filing *pro se*. Here, counsel filed and prosecuted the post-conviction motion, although counsel focused on trial counsel error. Nevertheless, Echols contends that the "force and logic" of those decisions should apply to this case.

Although we are inclined to disagree with Echols' contentions in this case, we need not address them because they are moot in view of our determination that the motion court did not abuse its discretion in invoking the escape rule to dismiss the post-conviction motion. We can find that the contentions are not moot only upon a belief that new appointed counsel could and would have pleaded such powerful and obvious claims of ineffective appellate counsel that the motion court would have abused its discretion in applying the escape rule in the face of such an obvious injustice.

Echols, in his *pro se* motion, failed to allege that appellate counsel was ineffective in any way. Likewise, now, he *still* fails to allege any specific claim of ineffective assistance of appellate counsel that he thinks should have been raised in his post-conviction motion. Lacking information about any specific claim of palpable ineffectiveness that could or should have been raised, we have no reason to believe that new counsel could have pleaded any claim of such a nature as to preclude the motion court's exercise of discretion to invoke the escape rule. Given the broad range of discretion enjoyed by the motion court with regard to the escape rule, and the lack of any reason to believe the court was required to do anything other than dismiss

the motion, the contention as to motion court error in this regard is moot.

## Conclusion

For the foregoing reasons, the judgment is affirmed.

LOWENSTEIN and SPINDEN, JJ., concur.