

# SUPREME COURT OF MISSOURI
## en banc

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | *Opinion issued April 30, 2024* |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | No. SC100265 |
| | ) | |
| JAMES EUGENE LOGAN, | ) | |
| | ) | |
| Appellant. | ) | |

### APPEAL FROM THE CIRCUIT COURT OF BOONE COUNTY
### The Honorable Stephanie M. Morrell, Judge

Following a bench trial, James Logan was convicted of three misdemeanor offenses: first-degree trespass, fourth-degree assault, and peace disturbance. Logan presents six points on appeal. The state argues this Court should exercise its discretion to dismiss Logan's appeal under the escape rule, because he repeatedly violated the terms of his probation and failed to appear for probation violation hearings while there was an active warrant for his arrest. This Court agrees and elects to apply the escape rule. Logan's appeal is dismissed.[1]

---

[1] Portions of this section are taken from the court of appeals' opinion by Judge Alok Ahuja.

**Factual and Procedural Background**

The offenses giving rise to Logan's convictions occurred August 17, 2022, at a Mexican restaurant in Columbia. On that afternoon, several customers were seated outside, in the restaurant's fenced-in patio area located in front of the restaurant.[2] The restaurant's owner was waiting tables.

The owner testified at trial, giving the following account. On the afternoon of August 17, the owner saw Logan walking outside the business, interacting and "yelling with the customers." The owner had previously had a problem with Logan coming to the restaurant and yelling at customers. On that prior occasion, the owner told Logan to leave and not come back, and he called the police to come and arrest Logan.

When he saw Logan again being disruptive and unruly on August 17, the owner decided he did not want to go outside because he knew Logan would start a fight with him. Instead, the owner called 9-1-1, but no one answered. As he was preparing to call again, Logan saw the owner inside the restaurant and came toward him. From inside, the owner held the restaurant door shut to keep Logan from entering. Logan tried to open the door. The owner was worried for the customers seated on the patio at the time. He told Logan to leave, but Logan refused. Logan began fighting with the owner, at which time the owner's brother came out from the kitchen to help.

Logan then took out a knife, and the owner grabbed a patio chair to shield himself. Logan ran off down the street, then shortly returned with rocks in his hand. Logan waited

---

[2] Because the patio was located in front of the restaurant, anyone wishing to go inside the restaurant would have to go through the patio area to do so.

at a business across the street and watched the restaurant. The owner called 9-1-1 again and told the customers on the patio to move inside. He then drove to the police station. Even though the police station was only a block away from the restaurant, the owner did not walk because Logan was still waiting outside with rocks in his hand.

When the owner arrived at the police station, he spoke with an information specialist and reported Logan was following him and wanted to fight him. No officers were present at the time. The information specialist testified that, upon the owner's report, she looked at a live street camera and saw Logan walking to the police station. The information specialist was familiar with Logan, as she had interacted with him previously. She then locked the door to the lobby because Logan was "gesturing like he wanted to fight." The information specialist became afraid for the owner's safety, as it appeared to her that Logan was pursuing him. Logan continued to yell and attempted to enter the police station. A police officer subsequently arrived and spoke with the owner and information specialist. Logan was no longer present at the time but was later arrested.

The state filed an information charging Logan with three misdemeanors: the class A misdemeanor of peace disturbance, for unreasonably and physically obstructing the entrance and exit of the restaurant; the class B misdemeanor of first-degree trespass, for knowingly remaining on the premises of the restaurant unlawfully; and the class C misdemeanor of fourth-degree assault, for placing the restaurant owner in apprehension of immediate physical injury.[3]

---

[3] Unlike felonies, misdemeanors may be initiated by the state filing an information. *See* Rules 21.01, 21.02.

The circuit court initially declined to set bond based on its determination that Logan "is a danger to the victim and the community." On August 18, 2022, Logan appeared in person, without counsel, for his initial appearance and arraignment and pleaded not guilty. The court set a detention review hearing for August 23, 2022.

On August 23, 2022, the circuit court conducted the detention review hearing pursuant to Rule 33.05. Logan appeared without counsel. The circuit court ordered bond amended to $10,000, cash or surety. On August 30, 2022, the circuit court ordered a supplemental bond investigation to assess the potential of home detention.

On September 13, 2022, Logan appeared with counsel and was ordered to be released on his own recognizance, subject to specified conditions including the completion of a substance use treatment program at the Burrell Behavioral Health Phoenix Clinic and that Logan shall not commit any new offenses. Logan posted bond and was released September 16, 2022. While Logan was out on bond, he committed the additional offenses of trespass and resisting arrest, in violation of his conditions of release. He further failed to complete the substance use treatment program as ordered by the circuit court. Accordingly, his release was revoked on October 5, though he was already in custody on different offenses.

On October 24, 2022, Logan filed a "motion to dismiss for violation of right to counsel," alleging the circuit court violated his constitutional right to counsel when it failed to appoint counsel at his August 18 initial appearance and arraignment.

A bench trial was held on November 10, 2022. The circuit court simultaneously tried Logan for the three misdemeanors charged in this case, as well as misdemeanor

4

assault charged in another case (which is also on appeal to this Court in case number SC100325). The circuit court heard argument regarding Logan's motion to dismiss, which it overruled.

The circuit court found Logan guilty of the peace disturbance count (Count I), though it reduced the charge to a class B rather than a class A misdemeanor. The circuit court further found Logan guilty of first-degree trespass (Count II) and fourth-degree assault (Count III). The circuit court sentenced him to 120 days in the Boone County jail for Count I. For Count II, the circuit court sentenced Logan to 180 days in jail but suspended the execution of the sentence pending the successful completion of two years of unsupervised probation during which Logan was to participate in a mental health treatment program, obey all laws, report all arrests or summons within 48 hours, and not return to the restaurant. For Count III, Logan was sentenced to 15 days of jail time, to run consecutively with the sentences imposed on Counts I and II. Logan filed a notice of appeal on November 14, 2022.

On March 7, 2023, while on unsupervised probation, Logan was charged with two additional counts of fourth-degree assault. Logan also failed to attend and complete the mental health treatment program the circuit court ordered. Accordingly, the state filed a motion to immediately suspend and revoke Logan's probation. The circuit court suspended Logan's probation that same day and set a probation violation hearing for March 14, 2023.

Logan failed to appear on March 14, and the hearing was rescheduled for March 21. Logan was "ordered to appear or [a] warrant will issue." Logan appeared on March 21, but, because he was without counsel, the circuit court continued the hearing to April 11.

On April 11, Logan appeared with counsel and requested a continuance. With no objection from the state, the circuit court continued the matter to May 16 and again ordered Logan to appear.

On May 16, Logan failed to appear. The matter was continued to May 23. Logan again failed to appear, but the circuit court proceeded with the hearing. The court found Logan's failure to appear demonstrated his promise alone was insufficient to reasonably assure his appearance; issued a warrant for his arrest; set bond at $500, cash or surety; and imposed the bond conditions previously set.

More than four months later, Logan was finally arrested, and the circuit court set a probation violation hearing for October 10. Logan appeared and requested a continuance to which the state did not object. The matter was continued in the same manner on October 17, November 2, and November 14. The circuit court ultimately held the probation revocation hearing on November 28, during which Logan admitted his violations. The circuit court then revoked his probation and reinstated a new two-year term of probation with the same terms and conditions.

Between the March 7, 2023, initial suspension of Logan's probation and his eventual arrest on October 2, 2023, Logan was charged with several additional criminal offenses. On March 26, 2023, Logan allegedly committed another act of first-degree trespass by refusing to leave a hospital after being denied treatment. On April 8, 2023, Logan, a registered sex offender, allegedly exposed his genitals at a bus stop within 500 feet of an elementary school, giving rise to two additional charges. Logan was also charged with the felonies of failing to register as a sex offender and residing within 1000 feet of a

school or child care facility as a sex offender after those violations were discovered April 9, 2023.[4]

## Analysis

On appeal, Logan argues his convictions should be reversed and the charges dismissed because appointed counsel was not present at his arraignment or at a subsequent bail review hearing (Points I-IV). Logan also argues the evidence was insufficient to support his convictions for first-degree trespass (Point V) and peace disturbance (Point VI). The state argues this Court should not reach the merits of Logan's arguments and apply the escape rule to dismiss his appeal. The Court agrees.

"The escape rule operates to deny the right of appeal to a defendant who escapes justice." *State v. Troupe*, 891 S.W.2d 808, 809 (Mo. banc 1995). Missouri appellate courts have held that the escape rule applies "equally to persons who avoid impending or immediate incarceration as well as to persons avoiding the possibility of incarceration through a revocation of probation or parole." *Wartenbe v. State*, 583 S.W.3d 115, 121 (Mo. App. 2019) (citing *Hicks v. State*, 824 S.W.2d 132, 133 (Mo. App. 1992)). Logan's repeated failure to appear for his probation revocation hearing between March 2023 and October 2023 falls within the ambit of the escape rule.

Missouri courts have found various rationales to support application of the escape rule. *See, e.g., Troupe*, 891 S.W.2d at 811-12 (applying the escape rule because the

---

[4] It further appears Logan continued his criminal activity after his probation was reinstated on November 28, 2023. On January 16, 2024, Logan again allegedly committed acts giving rise to a first-degree trespass charge and a charge of loitering within 500 feet of a school property as a registered sex offender.

defendant's eight-month absence hindered the administration of justice); *State v. Wright*, 763 S.W.2d 167, 168 (Mo. App. 1988) (applying the escape rule to preserve respect for the system of justice when the defendant was at large for just over five months); *State v. Kearns*, 743 S.W.2d 553, 554-55 (Mo. App. 1987) (applying the escape rule due to the administrative problems and delay caused by the defendant's five-year escape, as well as to discourage escape and encourage voluntary surrender).

Indeed, in applying the escape rule, this Court has granted appellate courts broad discretion in its application:

> A reviewing court may invoke procedural rules to protect the orderly and efficient use of its resources. In applying the escape rule, the relevant inquiry is whether the escape adversely affects the criminal justice system. If so, dismissing the escapee's appeal is appropriate. This determination is left to the sound discretion of the appellate tribunal.

*Troupe*, 891 S.W.2d at 811.

This Court holds the approximate six-month period during which Logan repeatedly failed to appear for his probation revocation hearing (four months of which he had an active warrant for his arrest) and allegedly committed numerous additional criminal offenses has adversely affected the criminal justice system such that this Court elects to apply the escape rule. Not only did Logan's conduct delay the resolution of his probation revocation hearing and waste judicial resources due to his repeated failure to appear, but the criminal offenses he allegedly committed while evading justice also will require the use of even more judicial resources and exhibit a disrespect for Missouri's system of justice.

As the court of appeals explained in *Wright*,

Those who seek the protection of this legal system must … be willing to abide by its rules and decisions. [Logan] comes before this [C]ourt seeking vindication of [his constitutional] rights. Earlier, however, when [he] absconded [he] showed [his] reluctance to accept the decision of the trial court or to await the vindication of [his] rights by this [C]ourt. [He] may not selectively abide by the decisions of the courts. By absconding, [he] has forfeited [his] right to appeal.

763 S.W.2d at 168-69 (citations omitted).

## Conclusion

For the reasons set forth above, Logan's appeal is dismissed.

_____
Robin Ransom, Judge

All concur.